**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| CHARLES VIVIANI and DAVID THORPE, individually and on behalf of all others similarly situated, | **Case No. 8:24-cv-02157-SDM-LSG** |
| Plaintiffs, | |
| vs. | |
| WATSON CLINIC, LLP, | |
| Defendant. | |

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW**

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs Charles Viviani and David Thorpe, individually, and on behalf of the Settlement Class,[1] respectfully submit this Unopposed Motion for Preliminary Approval of the Class Action Settlement.

**I.     INTRODUCTION**

This Action concerns a Data Incident related to Defendant Watson Clinic, LLP ("LLP"). On or around February 6, 2024, Defendant discovered that an unauthorized third party gained access to a limited portion of its network starting on January 26, 2024 (the "Data Incident"). Watson's investigation of the Data Incident determined that the threat actor accessed data pertaining to Watson's current and former patients, including name, address, birthdate, Social Security number or similar government identifier, driver's license number, financial account information, and/or medical information, which may include details such as diagnoses, treatments, pre- and/or post-operative medically necessary images, or medical record numbers.

The Parties have entered into a settlement to resolve Plaintiffs' claims on a classwide basis and dismiss all claims against Defendant with prejudice (the "Settlement"). As demonstrated below, the Settlement provides significant monetary relief for the Settlement Class, including a

---

[1] All capitalized terms used herein shall have the same meanings as those defined in Section II of the Settlement Agreement ("SA"), attached as ***Exhibit 1***.

non-reversionary all cash $10,000,000.00 Settlement Fund. The Court should find the Settlement is within the range of reasonableness necessary for this Court to grant Preliminary Approval under Rule 23(e) and enter an order: (i) granting Preliminary Approval of the Settlement; (ii) provisionally certifying the Settlement Class for settlement purposes; (iii) appointing the Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel for the Settlement Class; (iv) approving the form of the Notices and the Notice Program; (v) approving the Claim Form and the Claim process; (vi) appointing Kroll Settlement Administration LLC ("Kroll") as the Claims Administrator; (vii) establishing procedures and deadlines for Settlement Class members to opt-out of and/or object to the Settlement; and (viii) scheduling a Final Approval Hearing at which time the Court will consider whether to grant Final Approval of the Settlement and Class Counsel's Application for Attorneys' Fees and Costs.

## II.    BACKGROUND

According to its website, Watson has "a total staff of more than 1600 team members, over 350 physicians and providers, 40 diverse medical and surgical specialties and 19 state-of-the-art locations welcoming well over a million outpatient visits every year." SA ¶ 1. On or around February 6, 2024, Defendant discovered that an unauthorized third party gained access to a limited portion of its network starting on January 26, 2024. SA ¶ 2. Watson's investigation of the Data Incident determined that the threat actor accessed data pertaining to Watson's current and former patients, including name, address, birthdate, Social Security number or similar government identifier, driver's license number, financial account information, and/or medical information, which may include details such as diagnoses, treatments, pre- and/or post-operative medically necessary images, or medical record numbers. *Id.* Watson had these pre- and post-operative medically necessary photographic images because they were required by law to collect and maintain them.

As a result of the Data Incident, the PII and PHI of 280,278 individuals—including Plaintiffs and Settlement Class Members—was potentially impacted. *Id.* ¶ 1.28.

A.      **Procedural History**

After Watson provided initial notice of the Data Incident in or around August 2024, Plaintiff Viviani filed a putative Class Action Complaint in the United States District Court for the Middle District of Florida, bringing claims for negligence, breach of implied contract, breach of fiduciary duty, and violation of the Florida Deceptive and Unfair Trade Practices Act. SA ¶ 3  Plaintiff Thorpe filed a second class action case, and the cases were consolidated. *Id.* After subsequent investigation, Watson provided additional notice of the incident in February 2025. *Id*. ¶ 4.

Subsequently, the Parties determined that it was advisable to engage in voluntary settlement discussions. In anticipation of the mediation, Plaintiffs propounded informal discovery requests on Defendant to which Defendant responded by providing information related to, among other things, the nature and cause of the Data Incident, the number and geographic location of individuals that received notice of the Data Incident, and the specific type of information potentially impacted in the Data Incident. Plaintiffs and Class Counsel reviewed key documents and information, which, in consultation with their data security experts, allowed them to confidently evaluate the strengths and weaknesses of Plaintiffs' claims and prospects for success at class certification, summary judgment, and trial. The Parties also exchanged detailed mediation statements outlining their respective positions related to liability, damages, and settlement.

On March 19, 2025, the parties participated in a full-day mediation facilitated by an experienced mediator, Bennett Picker. SA ¶ 5.  After a full day of negotiations, the parties failed to reach an agreement; however, the parties continued discussions and eventually reached an agreement in principle, the terms of which were later finalized in this Settlement Agreement and the attached exhibits. *Id.*

The Settlement Agreement provides for the full and final resolution, discharge and settlement of all claims and causes of action asserted, or that could have been asserted, against Watson arising out of or relating to the Data Incident, by and on behalf of the Representative Plaintiffs and Settlement Class Members and any other such actions by and on behalf of any other persons in the United States relating to the Data Incident.

On April 29, 2025, the Parties filed a Notice of Settlement as a part of their Third Joint Status Report Regarding Mediation. ECF No. 27. In subsequent weeks, the Parties continued to negotiate certain terms of the Agreement, including the terms of the Releases, the Claims Administrator and its respective duties, the Notice Program and Notices, the Claim process and Claim Forms, and proposed schedule of post-settlement events. During this time, the Parties worked diligently to finalize the terms of the Agreement and ancillary documents. The Agreement was executed on July 18, 2025.

## III.     MATERIAL TERMS OF THE SETTLEMENT

A.     **Settlement Class -** Plaintiffs seek Preliminary Approval of the Settlement on behalf of the following Settlement Class:

**all individual U.S. residents to whom Watson sent notice of the Data Incident.**

Excluded from the Settlement Class are: (1) the Judge and Magistrate Judge presiding over the Lawsuits, any members of the Judges' respective staffs, and immediate members of the Judges' respective families; (2) officers, directors, members and shareholders of Watson; (3) persons who timely and validly request exclusion from and/or opt-out of the Settlement Class and the successors and assigns of any such excluded persons; and (4) any person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity or occurrence of the Data Incident or who pleads nolo contendere to any such charge. all living individuals residing in the United States who received notice of the Data Incident. SA ¶ 1.28.

B.     **Settlement Fund -** The Settlement provides for a non-reversionary $10,000,000.00 all cash Settlement Fund. SA ¶ 2.1. The Settlement Fund will be used to pay: (1) Digital Image Cash Payments; (2) reimbursement for Ordinary Out-of-Pocket Losses; (3) reimbursement for Extraordinary Losses and Attested Time; (4) Residual Cash Payments; (5) notice and administration costs; (6) service award payments approved by the Court; and (7) attorneys' fees and expenses awarded by the Court. *Id*.

**C.**    **Settlement Class Member Benefits -** When submitting a Claim, Settlement Class members (depending upon their circumstances) may elect to receive the following benefits:

**1.**    <u>Digital Image Cash Payments.</u>   Each Settlement Class Member who had one or more digital images published on the dark web as a result of the Data Incident will be sent a cash payment via check ("Digital Image Cash Payment")—without the need to file a claim form—according to the contents of the digital image, as follows:

a.    <u>Full face and exposed sensitive areas (ESA)</u> [2].   A cash payment of $75,000.00 will be sent to each Settlement Class Member who had at least one (1) digital image published containing (i) his or her face (including eyes) and (ii) an ESA (the "Full Face and ESA Group"). SA ¶ 2.2.1.

b.    <u>Partial face and ESA.</u>   A cash payment of $40,000.00 will be sent to each Settlement Class Member who is not in the Full Face and ESA Group and had at least one (1) digital image published containing (i) part of his or her face (below the eyes) and (ii) an ESA (the "Partial Face and ESA Group"). SA ¶ 2.2.2.

c.    <u>No face and ESA.</u>   A cash payment of $10,000.00 will be sent to each Settlement Class Member who is not in the Full Face and ESA Group or the Partial Face and ESA Group and had at least one (1) digital image published containing (i) none of his or her face and (ii) an ESA (the "No Face and ESA Group"). SA ¶ 2.2.3.

d.    <u>Full face and partial clothing of sensitive areas.</u>   A cash payment of $10,000.00 will be sent to each Settlement Class Member who is not in the Full Face and ESA Group, the Partial Face and ESA Group, or the No Face and ESA Group and had at least one (1) digital image published containing (i) his or her face (including eyes) and (ii) a sensitive portion of his or her body covered by undergarments (the "Full Face and Partial Clothing Group"). SA ¶ 2.2.4.

e.    <u>Partial face and partial clothing of sensitive areas.</u>   A cash payment of $7,500.00 will be sent to each Settlement Class Member who is not in the Full Face and ESA Group, the Partial Face and ESA Group, the No Face and ESA Group, or the Full Face and Partial Clothing Group and had at least one (1) digital image published containing (i) part of his or her face (below the eyes) and (ii) a sensitive portion of his or her body covered by undergarments (the "Partial Face and Partial Clothing Group"). SA ¶ 2.2.5.

---

[2] "Exposed Sensitive Area (ESA)" as used in this Settlement Agreement is as defined in Fla. Stat. § 847.001(11).

     f.    <u>No face and partial clothing of sensitive areas.</u>  A cash payment of $5,000.00 will be sent to each Settlement Class Member who is not in the Full Face and ESA Group, the Partial Face and ESA Group, the No Face and ESA Group, the Full Face and Sensitive Group, or the Partial Face and Sensitive Group and had at least one (1) digital image published containing (i) none of his or her face and (ii) a sensitive portion of his or her body covered by undergarments (the "No Face and Partial Clothing Group"). SA ¶ 2.2.6.

     g.    <u>Non-Sensitive.</u>  A cash payment of $100.00 will be sent to each Settlement Class Member who is not in the Full Face and ESA Group, the Partial Face and ESA Group, the No Face and ESA Group, the Full Face and Partial Clothing Group, the Partial Face and Partial Clothing Group, or the No Face and Partial Clothing Group and had at least one (1) digital image published containing any portion of his or her body, but which was neither ESA nor sensitive (the "Non-Sensitive Group"). SA ¶ 2.2.7.

Each of the above categories are mutually exclusive, and a class member that is eligible for a Digital Image Cash Payment will be eligible for only one such payment, categorized based upon the highest amount applicable to any published digital images concerning that class member.  SA ¶ 2.2. Any funds from uncashed checks for Digital Image Cash Payments will be redistributed via checks with a uniform, *pro rata*, percentage increase to those Settlement Class Members who cashed checks for Digital Image Cash Payments. SA ¶ 2.3.

     **2.**    <u>Reimbursement for "Ordinary" Out-of-Pocket Losses.</u> All Settlement Class members may submit a claim for Ordinary Out-of-Pocket Losses up to $500 per individual. SA ¶ 2.4. "Ordinary Out-of-Pocket Losses" are unreimbursed costs, losses, or expenditures incurred by a Class member in responding to notice of the Data Incident that were incurred between January 26, 2024, and the Claims Deadline. Ordinary Out-of-Pocket Losses may include, without limitation, the following: (1) costs associated with accessing or freezing/unfreezing credit reports with any credit-reporting agency; (2) other miscellaneous expenses incurred related to any Ordinary Out-of- Pocket Loss such as notary, fax, postage, copying, mileage, and long-distance telephone charges; and (3) credit monitoring or other mitigative costs. SA ¶ 2.4.1.

     **3.**    <u>Reimbursement for "Extraordinary" Losses and Attested Time</u>. In addition to submitting a claim for Ordinary Out-of-Pocket Losses, Settlement Class Members who believe

they have suffered identity theft, fraud, or other extraordinary losses may submit a claim for Extraordinary Losses and Attested Time up to $6,500 per individual. SA ¶ 2.5.1. "Extraordinary Losses" are unreimbursed costs, losses, or expenditures incurred by a Settlement Class Member that are fairly traceable to the Data Incident, and are costs, losses, or expenditures that are not reimbursable as Ordinary Out-of-Pocket Losses. Extraordinary Losses may include, without limitation, the unreimbursed costs, losses, or expenditures incurred as a result of identity theft or identity fraud, falsified tax returns, or other possible misuse of the Settlement Class Member's personal information. SA ¶ 2.5.2.

     **4.**    <u>Residual Cash Payment.</u> In addition to, or in the alternative to, making Claims for Ordinary Out-of-Pocket Losses and/or Extraordinary Losses and Attested Time, Settlement Class Members may elect to receive a cash payment of up to $50 on a claims-made basis. SA ¶ 2.8. All Settlement Class Members with an approved claim will receive the Residual Cash Payment, if funds are available. The amount of the Residual Cash Payment will be calculated by subtracting from the $10,000,000.00 Settlement Fund the aggregate amount of approved Claims for Digital Image Cash Payments, approved Claims for Ordinary Out-of-Pocket Losses, approved Claims for Extraordinary Losses and Attested Time, Costs of Claims Administration, service awards awarded by the Court, and attorney's fees and expenses awarded by the Court to determine the funds remaining in the Settlement Fund (the "Remainder") and dividing the Remainder by the number of Settlement Class Members with an approved claim, and thus could be less than $50. *Id*.

     **5.**    <u>Business Practice Commitments</u>. For a period of three years following the execution of a formal settlement agreement, Watson commits to pay for, implement and continue certain data-security enhancements and business practices. SA ¶ 10. Due to their confidential and sensitive nature, those enhancements and practices are not being publicly disclosed but have been shared with Class Counsel, who agree to maintain the confidentiality of that information. *Id*.

     **D.**    **Settlement Class Notice -** The Parties have agreed on a comprehensive Notice Program, which includes Letter Notices for those eligible for Digital Cash Payments, a Long Form Notice, Postcard Notice, a Settlement Website, and Settlement telephone line. *Id*. ¶¶ 3.2 *et seq.*.

Postcard Notice shall be disseminated via first-class U.S. Mail. *Id.*, ¶ 3.2.1. The Long Form Notice shall also be published on the Settlement Website and will be available by mail in hard copy upon request of the Claims Administrator. *Id.* ¶¶ 3.2.2, 3.2.3.

Settlement Class members may review the Long Form Notice, key documents, and dates on the Settlement Website, and get answers to frequently asked questions by calling a toll-free telephone number. *Id.* ¶¶ 3.2.3, 3.2.4.. The Notice, in forms similar to those attached to the Settlement Agreement as Exhibits B and C, will inform the Settlement Class of the general terms of the Settlement, including a description of the Action, the identity of the Settlement Class, and what claims will be released. It shall include, among other information: a description of the material terms; how to submit a Claim Form; the Claim Form Deadline; the Settlement Class member opt-out deadline; the deadline for Settlement Class Members to object to the Settlement and/or Class Counsel's Application for Attorneys' Fees and Costs; the Final Approval Hearing date; and the Settlement Website address at which Settlement Class members may access the Agreement and other related documents and information. Additionally, opt-out procedures will be explained, as well as how Settlement Class Members may exercise their right to object to the proposed Settlement and/or Class Counsel's Application for Attorneys' Fees and Costs at the Final Approval Hearing. SA Exhibits B and C.

**E.    Claim Submission Process -** Other than Digital Image Cash Payments (for which no claim is required), Settlement Class Members must accurately and timely submit a Claim by the Claims Deadline to receive Settlement Class Member Benefits. SA ¶¶ 1.6, 2.9.2. Claim Forms may be submitted online through the Settlement Website or through U.S. Mail sent to the Claims Administrator at the address designated on the Claim Form. *Id.* The Claims Administrator will review all Claim Forms to determine their validity, eligibility, and the type and amount of the Cash Payment to which the Settlement Class Member may be entitled. The Claims Administrator will provide Settlement Class Members who submitted Valid Claims with their Settlement Class Member Benefits no later than 60 days after the Effective Date, or within 30 days from the conclusion of the claim supplementation process, whichever is later.. *Id.* ¶ 8.2. Cash Payments will

be made electronically or by paper check, *Id*. ¶ 2.9.2. Greater detail on the Claims process is in Section 8 of the Settlement Agreement. *See id.* § 8.

  **F.** **Disposition of Residual Funds –** In the event there are unclaimed funds remaining in the Settlement Fund, funds shall be redistributed until it is economically unfeasible to do so, and, if still unclaimed, disbursed to a *cy pres* recipient to be agreed upon by the parties and approved by the Court or, if they cannot agree, selected by the Court. SA ¶ 10.18.

  **G.** **Claims Administrator –** Kroll, the proposed Claims Administrator, is a well-respected and reputable third-party administrator that has significant experience with data breach settlements. Joint Declaration of Counsel ("Joint Decl), attached hereto as ***Exhibit 2***, ¶ 31. The Claims Administrator shall effectuate the Notice Program, handle the Claims process, administer the Settlement Fund, and distribute the Settlement Class Member Benefits to Settlement Class Members. *See generally* S.A. The Claims Administrator's duties include, *inter alia*: (i) providing Class Action Fairness Act (CAFA) Notice; (ii) completing the Court-approved Notice Program; (iii) establishing and maintaining the Settlement Fund Escrow Account; (iv) establishing and maintaining a post office box to receive opt-out requests, and objections,; (v) establishing and maintaining the Settlement Website; (vi) establishing and maintaining an automated toll-free telephone line for Settlement Class members to call; (vii) responding to any mailed Settlement Class member inquiries; (viii) processing all opt-out requests from the Settlement Class; (ix) providing weekly reports to Class Counsel and Defendant's Counsel that summarize the number of Claims submitted, Claims approved and rejected, Notices of Deficiency sent, opt-out requests and objections received that week, the total number of opt-out requests and objections received to date, and other pertinent information; (x) in advance of the Final Approval Hearing, preparing a declaration confirming the Notice Program was completed in accordance with the terms of the Agreement and the Preliminary Approval Order, describing how the Notice Program was completed, indicating the number of Claim Forms received, providing the names of each Settlement Class member who timely and properly requested to opt-out from the Settlement Class, indicating the number of objections received, and other information as may be necessary to allow

9

the Parties to seek and obtain Final Approval; (xi) distributing, out of the Settlement Fund, Cash Payments by electronic means or by check; (xii) paying Court-approved attorneys' fees and costs out of the Settlement Fund; (xiii) paying Settlement Administration Costs out of the Settlement Fund following approval by Class Counsel; and (xiv) any other Settlement Administration function at the instruction of Class Counsel and Defendant including, but not limited to, verifying that the Settlement Fund has been properly administered and that the Class Benefits have been properly distributed. *Id.* The Parties shall jointly oversee the Claims Administrator.

> ## H.    Opt-Out and Objection Procedures.

Each individual wishing to exclude themselves from the Settlement Class shall individually sign and timely submit written notice of such intent to the designated Post Office box established by the Claims Administrator. SA ¶ 4.1. The Opt-Out Date is sixty (60) days after the Notice Date, and to be effective, written notice must be postmarked by the Opt-Out Date. *Id*.,  SA ¶ 1.20. The written notice must clearly manifest an individual's intent to be excluded from the Settlement Class. *Id*. All individuals who submit valid and timely notices of their intent to be excluded from the Settlement Class shall not receive any benefits of and/or be bound by the terms of this Settlement Agreement. SA ¶ 4.2. All individuals falling within the definition of the Settlement Class who do not request to be excluded from the Settlement Class shall be bound by the terms of this Settlement Agreement and Judgment entered thereon. *Id*.

Each Settlement Class Member desiring to object to the Settlement Agreement shall submit a timely written notice of his or her objection by the Objection Date, which is also sixty (60) days after the Class Notice Date. SA ¶¶ 1.19, 5.1,  Such notice shall state: (i) the name or caption of this Litigation; (ii) the objector's full name, address, telephone number, and e-mail address (if any); (iii) information identifying the objector as a Settlement Class Member, including proof that the objector is a member of the Settlement Class; (iv) a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable; (v) the identity of all counsel representing the objector; (vi) a statement whether the objector and/or his or her counsel will appear at the Final Fairness Hearing; (vii) a statement identifying all class

action settlements objected to by the objector in the previous 5 years; and (viii) the objector's signature and the signature of the objector's duly authorized attorney or other duly authorized representative, if any. To be timely, written notice of an objection in the appropriate form must be: (a) electronically filed by the Objection Date; or (b) mailed first-class postage prepaid to the Clerk of Court for the United States District Court for the Middle District of Florida and postmarked by no later than the Objection Date. SA ¶ 5.1 Objections must also be served concurrently with their filing or mailing upon Class Counsel and counsel for Watson either via the Court's electronic filing system (if filed electronically) or via U.S. mail (if mailed to the Clerk of Court). *Id.*

## I.    Release of Claims

The Settlement Agreement provides that Watson will receive a Release for all Released Claims. SA ¶ 1.24. The Released Claims are narrowly tailored and only address claims arising out of or relating to the Data Incident. *Id*.

## J.    Attorneys' Fees and Costs and Service Awards

The Settling Parties did not discuss the payment of attorneys' fees and litigation expenses and/or a service awards to Representative Plaintiffs until after the substantive terms of the settlement had been agreed upon, other than that the Settlement Fund would be used to pay reasonable attorneys' fees, litigation expenses, and service awards to Representative Plaintiffs as may be agreed to by Watson and Class Counsel and/or as ordered by the Court, or, in the event of no agreement, then as ordered by the Court. SA ¶ 7.1 Watson takes no position on an application by Class Counsel for an award of attorneys' fees not to exceed 33% of the Settlement Fund, and litigation costs and expenses in an amount not to exceed $100,000.00, subject to Court approval. SA ¶ 7.2. The Settlement is not contingent on approval of the requests for attorneys' fees and costs, and if the Court denies the requests or grants amounts other than what was requested, the remaining provisions of the Agreement shall remain in force. *Id.* ¶ 7.6. The Notice will advise the Settlement Class of the amounts of attorneys' fees that Class Counsel intends to seek. *See* SA Exhibits B and C.

Plaintiffs may also seek service awards of up to $2,500.00 per Class Representative, subject

to the Court's approval. SA ¶ 7.3.

## V.    ARGUMENT

### A.    The Settlement Class Should Be Certified for Settlement Purposes.

The Supreme Court has recognized that the benefits of a proposed settlement of a class action can be realized only through the certification of a settlement class. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). To certify a class, "[t]he class representative must have standing to sue and the proposed class must be adequately defined and clearly ascertainable." *DeSouza v. AeroCare Holdings LLC*, No. 6:22-CV-1047-RBD-LHP, 2023 WL 5434712, at *2 (M.D. Fla. Aug. 7, 2023), *report and recommendation adopted*, No. 6:22-CV-1047-RBD-LHP, 2023 WL 5432302 (M.D. Fla. Aug. 23, 2023) (citations omitted). Plaintiffs must satisfy all Rule 23(a) (numerosity, commonality, typicality, and adequacy), and one of the requirements of Rule 23(b). Plaintiffs seek certification under Rule 23(b)(3), requiring common questions of law or fact to predominate over any individual issues and class treatment to be the superior method for efficiently handling the case. Fed. R. Civ. P. 23(b)(3). These requirements are met for settlement purposes.

### 1.    Standing –

A plaintiff must demonstrate Article III standing to pursue each of the claims asserted in the complaint. *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560-61 (1992). Plaintiff must establish that he or she: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Further, "[t]o have standing to represent a class, a party must not only satisfy the individual standing prerequisites, but must also 'be part of the class and possess the same interest and suffer the same injury as the class members.'" *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1307 (11th Cir. 2008) (quoting *Prado–Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000)). Standing exists when a plaintiff's sensitive personal information is allegedly accessed and exfiltrated in a data breach. *Desue v. 20/20 Eye Care Network, Inc.*, No. 21-cv-61275, 2022 WL 796367, at *4 (S.D. Fla. Mar. 15, 2022); *see also Desue v. 20/20 Eye Care Network, Inc.*, No. 21-cv-61275, 2022 WL 17477004, at *5 (S.D. Fla.

Dec. 5, 2022). There is no requirement that Article III standing be proved with evidentiary support at the settlement approval stage. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1261 n.8 (11th Cir. 2021).

Here, all Plaintiffs have standing because, like the Plaintiffs in *Desue*, their PI was allegedly impacted in the Data Incident when an unauthorized third party gained access to Defendant's system's files containing its patients' sensitive and confidential information. Because all Plaintiffs and Settlement Class members received notice that their PII and PHI may have been impacted in the Data Incident, they have all suffered an imminent and substantial risk of identity theft or fraud. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d at 1262 (finding consumers had standing to bring action against consumer reporting agency arising out of data privacy breach, where they alleged hackers obtained their personal information, identity thieves could use their information to create fake identities, fraudulently obtain loans and tax refunds, and destroy their credit-worthiness, they remained subject to pervasive, substantial, and imminent risk of identity theft and fraud, some consumers had already suffered actual identity theft and resulting injuries, and other consumers had expended resources to mitigate risk of identity theft). This injury is consistent for all Settlement Class members.

Moreover, it is well established that the lost benefit of a bargain is sufficient to confer standing. *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1205 (S.D. Fla. 2022) ("[W]here plaintiffs allege that 'there was an explicit or implicit contract for data security, that plaintiffs placed value on that data security, and that [d]efendants failed to meet their representations about data security,' courts have consistently held these allegations sufficient to allege injuries in fact.") (internal citation omitted); *see also Kostka v. Dickey's Barbecue Rests., Inc.*, No. 3:20-CV-03424-K, 2022 WL 16821685, at *4 (N.D. Tex. Oct. 14, 2022) ("The Court finds that the Settling Plaintiffs have properly alleged Article III standing for all potential class members on the basis of their breach-of-an-implied contract claim."), *report and recommendation adopted*, 2022 WL 16821665 (N.D. Tex. Nov. 8, 2022). This injury applies to all Settlement Class members. Plaintiffs therefore have standing to assert their claims.

Notably, the Court previously ordered Plaintiffs to show cause regarding federal jurisdiction, including standing, and, based on the response, allowed the case to proceed. ECF Nos. 15 and 19. This further establishes that Plaintiffs have standing.

      **2.**      **Ascertainability -** Ascertainability is an implied prerequisite of Rule 23. *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302 (11th Cir. 2021). Before a district court can consider whether a potential class satisfies Rule 23(a), it must find the proposed class is "adequately defined and clearly ascertainable." *Id.* (citation omitted). Class definition and ascertainability typically involve one inquiry because, without an adequate definition for a proposed class, a district court cannot ascertain who belongs in the class. *Id.* For purposes of class certification, "a proposed class is ascertainable if it is adequately defined such that its membership is capable of determination." *Id.* at 1304. An adequately defined class thus should be defined by objective criteria with its members identifiable. *Scoma Chiropractic, P.A. v. Dental Equities, LLC*, No. 2:16-cv-41-JLB-MRM, 2021 WL 6105590, at *10–11 (M.D. Fla. Dec. 23, 2021). Here, the Settlement Class is adequately defined and clearly ascertainable because the Settlement Class definition contains sufficient objective criteria to allow an individual to determine whether he or she is a member of the Settlement Class—i.e., whether they were sent notification from Defendant that their PII or PHI was potentially compromised as a result of the Data Incident. *See* S.A., ¶ 1.28.

      **3. Rule 23(a) -** Under Rule 23(a), the Court must determine whether: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Each requirement is satisfied here.

      **Numerosity -** Class sizes exceeding 40 are typically sufficient to satisfy this requirement. *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986). Here, the joinder of 280,278 Settlement Class members would certainly be impracticable, and thus numerosity is satisfied. *See DeSouza*, 2023 WL 5434712, at *4 (numerosity met for 32,035 class members).

      **Commonality -** This requirement is satisfied where the plaintiffs assert claims that "depend

upon a common contention" that is "of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Courts in this Circuit have previously addressed this requirement in the context of data breach class actions and found it satisfied. *See, e.g., In re Overby-Seawell Co. Customer Data Sec. Breach Litig.*, No. 1:23-MD-03056 (N.D. Ga.) ("*Overby-Seawell*"), ECF No. 88 at 5; *Desue*, 2022 WL 17477004, at *4; *see also In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d at 1274-75, 1277 (affirming district court's certification of class, including finding of commonality). Here, as in the cases cited above, the claims turn on whether Defendant's security environment was adequate to protect the Settlement Class's PII and PHI. Resolution of that inquiry revolves around evidence that does not vary between members, and so can be fairly resolved—at least for purposes of settlement—for all Settlement Class members at once.

**Typicality -** The commonality and typicality analyses often overlap, as they are both focused on "whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification." *Prado-Steiman ex rel. Prado*, 221 F.3d at 1278. Here, there is a nexus between Plaintiffs' and other Settlement Class members' claims since they each concern Defendant's alleged failure to protect sensitive PI in connection with the Data Incident. Plaintiffs' claims are typical of other Settlement Class members claims because they are based on the same legal theories and underlying events.

**Adequacy of Representation -** "To determine whether the adequacy requirement is met, we ask: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d at 1275 (quotation omitted). "This encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *DeSouza*, 2023 WL 5434712, at *5 (quotation omitted).

Here, Plaintiffs' interests are coextensive with those of the Settlement Class. Like all

Settlement Class members, Plaintiffs have claims against Defendant arising from the Data Incident that allegedly impacted their PII and PHI. Plaintiffs were similarly injured by Defendant's allegedly wrongful acts. Proof of Plaintiffs' claims would necessarily involve adjudicating the same issues of law and fact as the claims of the Settlement Class as a whole. Thus, Plaintiffs and the Settlement Class they seek to represent have the same interests in recovering damages. Further, Plaintiffs have also diligently and adequately prosecuted this action through Class Counsel by, among other things, reviewing filings, promptly providing documents and information to Class Counsel, acting in the best interest of the Settlement Class, and accepting the class-wide Settlement. Joint Decl. ¶ 40.

Class Counsel are highly qualified and have a great deal of experience litigating data privacy class actions. *See* Joint Decl. ¶ 36, and ECF Docs. 20-1 and 20-2. Class Counsel have litigated this Action, including evaluating the claims, preparing comprehensive pleadings, serving discovery, consulting with data security experts, complying with Court orders and requirements, and participating in a mediation that ultimately resulted in this Settlement. Joint Decl., ¶¶ 11-20. Accordingly, Plaintiffs and Class Counsel will adequately protect the Settlement Class.

**4.  Rule 23(b)(3) –** Rule 23(b)(3) requires the court to find "questions of law or fact common to class members predominate over questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). When assessing predominance and superiority, the court may consider the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, … for the proposal is that there be no trial.").

**Predominance –** "In reviewing predominance, the court must determine whether the common issues are more prevalent or important than the individual issues." *Junior v. Infinity Ins. Co.*, No. 6:18-cv-1598-Orl-78EJK, 2020 WL 8254235, at *5 (M.D. Fla. June 5, 2020) (citation omitted). A common question is one that "can be resolved by the same evidence for each class

16

member, or it can be proven by generalized, class-wide proof." *Id.*

Common issues clearly predominate here. This case is like *Desue*, in which the Southern District of Florida held that,

> Rule 23(b)(3)'s predominance requirement is satisfied because liability questions common to all Settlement Class Members substantially outweigh any possible issues that are individual to each Settlement Class Member. As an example, each Class Member's claims are based on the alleged failure of the Defendants to appropriately maintain the confidentiality of their PII, which they allege was caused by the same actions and inactions of Defendants. Other key, common factual and legal questions predominate in this matter, including whether Defendants' data systems and security policies and practices were adequate and reasonable; the extent of Defendants' knowledge regarding any potential vulnerabilities in its data systems; and whether Plaintiffs and the Class Members suffered losses because of Defendants' actions.

*Desue*, 2022 WL 17477004, at *5. Indeed, common factual and legal questions predominate over individual questions here, based on Defendant's alleged failure to safeguard all Settlement Class members' PII and PHI from unauthorized access. The answers to these key questions will be the same for each Settlement Class member because all of them had their PII and PHI impacted in the Data Incident. As such, the predominance requirement is readily satisfied.

**Superiority** – The superiority analysis involves an examination of "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.*, 601 F.3d 1159, 1183-84 (11th Cir. 2010) (internal quotation omitted). A class action is the only reasonable method to fairly and efficiently adjudicate Settlement Class members' claims. *See Tweedie v. Waste Pro of Fla., Inc.*, No. 8:19-cv-1827-TPB-AEP, 2021 WL 3500844, at *7 (M.D. Fla. May 4, 2021) ("[G]iven the large number of purported class members, the similarity of the claims of all class members, and the relatively small potential recovery in individual suits, proceeding as a class action lawsuit is superior over any other forms of litigation."). Indeed, Courts in this Circuit recognize the superiority of the class mechanism in the context of data breach litigation. *See, e.g., In re Overby-Seawell*, ECF No. 88 at 6 (finding class action and class settlement superior to other methods available); *Desue*, 2022 WL 17477004, at *5 (finding class treatment superior for

settlement purposes).

**B.    The Settlement Should be Preliminarily Approved.**

After determining settlement class certification is likely, the Court must then determine whether the settlement is worthy of preliminary approval and providing notice to the settlement class. "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *DeSouza*, 2023 WL 5434712, at *3 (quoting *In re Checking Acct. Overdraft Litig.*, 275 F.R.D. 654, 661 (S.D. Fla. 2011)). The court may approve the settlement if it is "fair, reasonable, and adequate" based on the following factors:

> (A)   the class representatives and class counsel have adequately represented the class;
> (B)   the proposal was negotiated at arms' length;
> (C)   the relief provided for the class is adequate, taking into account:
> > (i)     the costs, risks, and delay of trial and appeal;
> > (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D)   the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). In addition, courts in the Eleventh Circuit must also consider the following "*Bennett*" factors: (1) the likelihood of success at trial; (2) the range of possible recoveries; (3) the point on or below the range of possible recoveries at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and degree of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved. *See Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The Settlement warrants Preliminary Approval under the factors set forth in Rule 23(e)(2) and *Bennett*.

**1.    Rule 23(c)(2) is Satisfied.**

**Adequacy of Representation (Rule 23(c)(2)(A))** – As this Court held in *Petersen v. Am. Gen. Life Ins. Co.*, 3:14-CV-100-J-39JBT, 2019 WL 11093816, at *1 (M.D. Fla. Oct. 22, 2019) (Davis, J.):

> In evaluating the adequacy of class counsel and the class representative, the Advisory Committee on the Federal Rules of Civil Procedure ("Committee") has instructed courts to consider whether class counsel and plaintiffs "had an adequate information base" before negotiating and entering into the settlement. *Id.* The proper inquiry is whether the plaintiffs and class counsel engaged in enough discovery to afford them an "adequate appreciation of the merits of the case[.]"

*Id.* at *5 (footnote and additional citation omitted). Here, Plaintiffs are adequate representatives. Plaintiffs' respective interests are coextensive and do not conflict with the interests of the Settlement Class. Joint Decl. ¶ 41. Plaintiffs have the same interest in the Settlement relief, and the absent Settlement Class members have no diverging interests. *Id.* Likewise, Class Counsel are experienced in complex class action litigation, including similar data breach actions, and they devoted substantial time and resources to vigorous litigation. *See id.*, ¶¶ 36-37.

**The Settlement Was Negotiated at Arm's Length (Rule 23(e)(2)(B))** – The Settlement was reached in the absence of collusion and is the result of good faith, informed, and arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues at stake. *Id.*, ¶ 25. Class Counsel thoroughly investigated and analyzed Plaintiffs' claims, engaged in discovery, and consulted with data security experts, enabling them to gain an understanding of the evidence related to central questions in the Action and preparing them for well-informed settlement negotiations. *See id.* ¶¶ 16-18, 33-34; *see also Kuhr v. Mayo Clinic Jacksonville*, 530 F. Supp. 3d 1102, 1115 (M.D. Fla. 2021) ("Class Counsel had an adequate information base upon which to conduct negotiations."). The Settlement was reached with the assistance of a well-respected and experienced mediator, Mr. Picker. *See* Joint Decl. ¶ 20; *See Petersen*, 2019 WL 11093816, at *6 (involvement of a mediator indicates that negotiations protect and further class interests) (quoting Rule 23(e)(2)(B), Committee Notes on Rules–2018 Amendment; citing *Poertner v. Gillette Co.*, 618 F. App'x 624, 630 (11th Cir. 2015)). Moreover, attorneys' fees and costs were not discussed until the Parties agreed to all other material Settlement terms. *Id.*, ¶ 24. For these reasons and those discussed related to attorneys' fees below, there was no fraud or collusion in arriving at the Settlement. *Bennett*, 737 F.2d at 986.

**The Adequacy of the Settlement Relief (Rule 23(e)(2)(c))** – Although Plaintiffs believe the claims asserted in the Action are meritorious and the Settlement Class would ultimately prevail at trial, continued litigation against Defendant poses significant risks that make any recovery for the Settlement Class uncertain. The Settlement's fairness is underscored by consideration of the obstacles that the Settlement Class would face in ultimately succeeding on the merits, as well as the expense and likely duration of the litigation. Despite the risks involved with further litigation, the Settlement provides outstanding benefits, including substantial Cash Payments and reimbursement of documented losses for all Settlement Class Members. *See In re Equifax*, 999 F.3d at 1273 ("Settlements also save the bench and bar time, money, and headaches"); *Petersen*, 2019 WL 11093816, at *7 (recognizing delay and risk of defendant prevailing as weighing in favor of approving settlement). Also, the Claim Form submission process and distribution of Settlement Class Member Benefits is fair, convenient, and effective. Settlement Class Members will promptly receive Cash Payments by electronic means or paper check issued by the Claims Administrator. The Claims Administrator is highly qualified to manage the entire process. Joint Decl., ¶ 31. Furthermore, the attorneys' fees do not impact the other terms of the Settlement, as Class Counsel and Defendant negotiated and reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material Settlement terms. *See James D. Hinson Elec. Contracting Co., Inc. v. BellSouth Telecomm. Inc.*, No. 3:07-cv-598, 2012 WL 12952592, at *2 (M.D. Fla. July 30, 2012) (because agreement as to amount of attorneys' fees "was not reached until after a settlement had been reached in principle on its other terms and that the agreement was not the product of collusion or fraud[,]" it was entitled to "substantial weight"). The Settlement, including disbursement of the Settlement Class Member Benefits, is also not contingent on approval of the attorneys' fee award to Class Counsel. S.A., ¶ 7.6. Subject to the Court's approval, the proposed attorneys' fees award is also fair. Finally, the Parties' agreements are all in the Agreement, with the exception of a Separate Opt-Out Agreement that Plaintiffs will seek to submit to this Court under seal. Joint Decl., ¶ 23.

### The Equitable Treatment of Settlement Class Members (Rule 23(e)(2)(c))

All Settlement Class Member are given an equal opportunity to claim Settlement Class Member Benefits under the Settlement. While the relief categories are individually tailored to the circumstances of the Settlement Class Members, all Settlement Class Members may claim monetary benefits applicable to their particular set of circumstances. Moreover, all will benefit from Watson's business practice changes.

### The *Bennett* factors support Preliminary Approval.

Although typically a consideration at the final approval stage, here, the *Bennett* factors still point towards preliminary approval. First, the benefits of settlement outweigh the risk of trial given the substantial relief that Settlement Class members will be afforded, including the various Cash Payments offered from the $10,000,000 non-reversionary all-cash Settlement Fund.

Second and third, the Settlement is within the range of possible recoveries and is fair, adequate, and reasonable. *See Burrows v. Purchasing Power, LLC*, No. 1:12-CV22800, 2013 WL 10167232, at *6 (S.D. Fla. Oct. 7, 2013) (considering the second and third *Bennett* factors together). In determining whether a settlement is fair and reasonable, the court must also examine the range of possible damages that Plaintiffs could recover at trial and combine this with an analysis of Plaintiffs' likely success at trial to determine if the settlements fall within the range of fair recoveries. *See, e.g., In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d at 1274 (affirming district court's decision that settlement was "fair, reasonable, and adequate because the settlement reflects relief the Court finds is in the high range of what could have been obtained had the parties continued to litigate."). Here, Settlement Class members may submit Claims for Digital Image Payments (if applicable) documented ordinary losses up to $500.00 and/or documented extraordinary losses up to $6,500.00, and Residual Cash Payments. SA. ¶¶ 2.2, 2.3, 2.4, and 2.8.

Fourth, continued litigation would be lengthy and expensive. Data breach litigation is often difficult and complex. Joint Decl., ¶ 14. Although the Parties entered into a Settlement relatively early in litigation, the Settlement negotiations were hard-fought, and the Parties expended significant time and energy on this Action. *Id.*, ¶ 32.

Fifth, whether there is any opposition to the Settlement is better considered at the Final Approval stage, after Notice has been provided to the Settlement Class and they are given the opportunity to object.

Sixth, despite resolving at an early stage of litigation, Plaintiffs have sufficient information to evaluate the merits and negotiate a fair, adequate, and reasonable settlement. *See, e.g., Cotter v. Checkers Drive-In Restaurants, Inc.*, No. 8:19-cv-1386-VMC-CPT, 2021 WL 3773414, at *9 (M.D. Fla. Aug. 25, 2021) (approving settlement where parties settled relatively early with experienced counsel who had sufficient information to evaluate merits of the case, engaged in full-day mediation, and engaged in post-mediation discovery); *Kuhr*, 530 F. Supp. 3d at 1115 (approving settlement early in the litigation without involvement of a neutral mediator). This case has been thoroughly investigated by counsel experienced in data breach litigation. Joint Decl. ¶¶ 16-18, 33. Moreover, Class Counsel's informal exchange of discovery and mediation with an experienced mediator has ensured a fair, reasonable, and adequate Settlement. *Id.*

Accordingly, the Court should find that the Settlement is fair, reasonable, and adequately protects the interests of the Settlement Class members.

### C.    The Court Should Appoint the Proposed Class Representatives, Class Counsel, and Claims Administrator.

Plaintiffs Charles Viviani and David Thorpe seek appointment as Class Representatives. Plaintiffs have cooperated with Class Counsel and assisted in the preparation of the complaints and in settlement of the Action. Joint Decl. ¶ 40. Moreover, Plaintiffs are committed to continuing to assist Class Counsel through Final Approval. *Id.* Because Plaintiffs are adequate, the Court should appoint them as Class Representatives.

For the reasons previously discussed with respect to adequacy of representation, the Court should designate Patrick A. Barthle of Morgan & Morgan Complex Litigation Group and Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC as Class Counsel. Rule 23(g), which governs the standards and framework for appointing class counsel for a certified class, sets forth four criteria the district court must consider in evaluating the adequacy of proposed counsel:

(1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]" Fed. R. Civ. P. 23(g)(1)(B). Here, Plaintiffs and the Settlement Class are represented by qualified and competent Class Counsel who are leaders in the class action field and have extensive experience prosecuting and resolving complex class actions. Before commencing litigation, Class Counsel investigated the potential claims against Defendant, interviewed potential plaintiffs, and gathered information regarding the Data Incident. Joint Decl. ¶ 11. Class Counsel has devoted substantial time and resources to prosecuting this Action and will continue to do so. *Id.* ¶ 38.

Finally, the Parties have agreed that Kroll shall be the Claims Administrator. Kroll has a long history of successful administrations in data breach class actions.

### D.    The Notice Program Contains the Best Notice Practicable.

Under Rule 23(c), the Court should "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement must be the "best notice practicable." Fed. R. Civ. P. 23(e)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). The best notice practicable is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Moreover, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner."

The Notice Program satisfies the foregoing criteria. Direct notice will be provided by first-class U.S. Mail. SA ¶ 3.2.1. The Parties negotiated the form of the Notices. The Notice will be

disseminated to all persons who fall within the definition of the Settlement Class and whose names and addresses can be identified with reasonable effort from Defendant's records, and through databases tracking nationwide addresses and address changes. In addition, Kroll will administer the Settlement Website containing relevant information about the Settlement. Further, the Notice includes, among other information: a description of the material terms of the Settlement; how to submit a Claim Form; the Claim Form Deadline; the last day of the Opt-Out Period for Settlement Class Members to opt-out of the Settlement Class; the last day of the Objection Period for Settlement Class Members to object to the Settlement and/or Application for Attorneys' fees and Costs; the Final Approval Hearing date; and the Settlement Website address at which Settlement Class members may access this Agreement and other related documents and information. S.A. ¶ 3.2.3. Finally, the Notice Program satisfies the requirements of Rule 23(h)(1), as it notifies the Settlement Class that Class Counsel may apply to the Court for an award of attorneys' fees of up to 33.33% of the Settlement Fund, plus reimbursement of costs. Thus, the Court should approve the Notice Program, including the form and content of the Notices. *See* SA Exhibits B and C.

  **E.**   **Proposed Schedule of Post-Settlement Events**

  Plaintiffs respectfully propose the following schedule for the Court's review and approval. If the Court agrees with the proposed schedule, Plaintiffs request that the Court schedule the Final Approval Hearing for the week of December 8, 2025, or such later date available on the Court's calendar.

| Class Notice Date | **Within 30 days of Preliminary Approval Order** |
|---|---|
| Deadline for submitting motion for attorneys' fees, expenses, and service awards | **14 days prior to Opt-Out and Objection Dates** |
| Opt-out Date | **60 days after Class Notice Date** |
| Objection Date | **60 days after Class Notice Date** |
| Final Approval Hearing | **Week of December 8, 2025 (or such later date available on the Court's calendar).** |
| Claims Deadline | **90 days after Class Notice Date** |

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs and Class Counsel respectfully request that the Court: (1) Preliminarily approve the Settlement; (2) Certify the Settlement Class for settlement purposes; (3) Approve the Notices and Notice Program, including the opt-out and objection procedures; (4) Approve the Claim Form and Claims process; (5) Appoint Plaintiffs Charles Viviani and David Thorpe as Class Representatives; (6) Appoint Patrick A. Barthle of Morgan & Morgan Complex Litigation Group and Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC as Class Counsel; (7) Appoint Kroll as the Claims Administrator; and (8) Enter the proposed Preliminary Approval Order, attached to the Settlement Agreement as *Exhibit D*.

Dated: July 18, 2025.                              Respectfully submitted,

/s/ *Gary M. Klinger*
Gary M. Klinger (*pro hac vice*)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: 866-252-0878
Fax: 865-522-0049
gklinger@milberg.com

Patrick A. Barthle II
**MORGAN & MORGAN
COMPLEX LITIGATION GROUP**
Florida Bar No. 99286
E-Mail: pbarthle@ForThePeople.com
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 229-4023
Facsimile: (813) 222-4708

*Interim Co-Lead Class Counsel and
Proposed Class Counsel*

## LOCAL RULE 3.01(g) CERTIFICATION

Plaintiffs have met and conferred with Defendant and Defendant does not oppose the relief requested in this Motion for Preliminary Approval.

*/s/ Gary M. Klinger*
GARY M. KLINGER

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served via email via the CM/ECF system on all counsel of record on this 18th day of July 2025.

*/s/ Gary M. Klinger*
GARY M. KLINGER