## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

CHARLES VIVIANI and DAVID THORPE, individually and on behalf of all others similarly situated,

          Plaintiffs,

vs.

WATSON CLINIC, LLP,

          Defendant.

**Case No. 8:24-cv-02157-SDM-LSG**

## REPRESENTATIVE PLAINTIFFS' MOTION FOR ATTORNEY'S FEES, LITIGATION COSTS, AND SERVICE AWARDS, AND MEMORANDUM OF LAW IN SUPPORT

Representative Plaintiffs[1] Charles Viviani and David Thorpe, on behalf of themselves and all others similarly situated, request that the Court award them attorney's fees of 33% of the non-reversionary Settlement Fund ($3,300,000.00), reasonable out-of-pocket litigation expenses of $77,864.67, and service awards of $2,500.00 each.. The $10,000,000.00 Settlement Fund, obtained on behalf of the approximately 280,278 members of the Settlement Class, breaks down (for purpose of comparing to other similar data breach settlements) to **$35.67** per person, an

---

[1] Capitalized terms are as defined in the Settlement Agreement (ECF No. 31-1).

exemplary result for a data breach case of this size, particularly one with no statutory damages at issue.

As explained below, the requested $77,864.67 in litigation costs were reasonably incurred and the requested attorney's fees are 33% of the Settlement Fund, a reasonable and appropriate award under Eleventh Circuit law given the facts and circumstances of this case, including the extraordinary result obtained for the class.

## I.    <u>INTRODUCTION</u>

Following hard-fought settlement negotiations, the Parties[2] reached a settlement to resolve claims arising from a Data Incident that occurred starting on January 26, 2024, when an unauthorized third party gained access to a limited portion of Watson's network. The Settlement Fund is a non-reversionary common fund of $10,000,000.00 for the benefit of approximately 280,278 class members, including (i) Digital Image Cash Payments, (ii) reimbursement for Ordinary Out-of-Pocket Losses, (iii) reimbursement for Extraordinary Losses and Attested Time, and (iv) Residual Cash Payments. Subject to Court approval, the Settlement Fund will also pay for the costs of notice and claims administration, service awards to Representative Plaintiffs, litigation costs, and attorneys' fees. Watson has also

---

[2] The Parties to the settlement are Representative Plaintiffs, on behalf of the proposed Settlement Class, and Defendant Watson Clinic, LLP ("Watson").

committed, for a period of three (3) years, to pay for, implement and continue certain data-security enhancements and business practices.

The settlement is a favorable result for the Settlement Class, securing valuable benefits tailored to the facts of the case. Representative Plaintiffs thus move for an order awarding service awards, litigation costs, and attorney's fees. In support of this motion, Representative Plaintiffs submit the declaration of co-Class Counsel Patrick A. Barthle II and Gary Klinger ("Joint Decl."), **attached as Exhibit A**.

## II.    FACTUAL BACKGROUND

On or around February 6, 2024, Watson discovered that an unauthorized third party gained access to a limited portion of its network starting on January 26, 2024. Watson's investigation of the Data Incident determined that the threat actor accessed data pertaining to Watson's current and former patients, including name, address, birthdate, Social Security number or similar government identifier, driver's license number, financial account information, and/or medical information, which may include details such as diagnoses, treatments, pre- and or post-operative medically necessary images, or medical record numbers.

After Watson provided initial notice of the Data Incident in or around August 2024, Plaintiff Viviani filed a putative Class Action Complaint in the United States District Court for the Middle District of Florida, bringing claims for negligence, breach of implied contract, breach of fiduciary duty, and violation of the Florida

Deceptive and Unfair Trade Practices Act. Plaintiff Thorpe filed a second class action case, and the cases were consolidated.

After subsequent investigation, Watson provided additional notice of the incident in February 2025.

On March 19, 2025, the Parties participated in a full-day mediation facilitated by an experienced and highly sought after mediator, Bennett Picker, Esq. Joint Decl. 6. After a full day of negotiations, the Parties failed to reach an agreement; however, the Parties continued discussions and eventually reached an agreement in principle, the terms of which were later finalized in the Settlement Agreement and its attached exhibits. *Id* ¶ 7. Attorney's fees were not discussed in any manner until the Parties had reached agreement on the material terms of the settlement. *Id*. ¶ 8.

### III.  <u>ARGUMENT</u>

### 1.  The Court Should Award the Requested Attorney's Fees Because They Are Reasonable and Authorized by the Parties' Agreement.

"It is well established that counsel whose work results in a substantial benefit to a class are entitled to a fee under the common benefit doctrine." *Dusko v. Delta Air Lines, Inc.*, No. 1:20-CV-01664-ELR, 2023 WL 12070227, at *7 (N.D. Ga. Oct. 5, 2023) (citations omitted) (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). "The doctrine serves the 'twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from

the named plaintiff's efforts.'" *Id.* (quoting *In re Gould Sec. Litig.*, 727 F. Supp. 1201, 1202 (N.D. Ill. 1989)).

"The controlling authority in the Eleventh Circuit is *Camden I*, which holds that fees in common fund cases must be calculated using the percentage rather than the lodestar approach. *Camden I* does not require any particular percentage." *Id.* "The court stated: 'There is no hard and fast rule ... because the amount of any fee must be determined upon the facts of each case.'" *Id.* (quoting *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991)).

### a. The Requested Attorney's Fees of 33% of the Settlement Fund Are Appropriate.

"In selecting the percentage in a particular case, a district court should apply the 12 factors from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974), as well any other pertinent factors." *Id.* (quoting *Camden I*, 946 F.2d at 776).

> The factors include: (1) the time and labor required; (2) the novelty and difficulty of the relevant questions; (3) the skill required to properly carry out the legal services; (4) the preclusion of other employment by the attorney as a result of his acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the clients or the circumstances; (8) the results obtained, including the amount recovered for the clients; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the clients; and (12) fee awards in similar cases.

5

*In re Fortra File Transfer Software Data Sec. Breach Litig.*, 794 F. Supp. 3d 1203, 1223 n.5 (S.D. Fla. 2025) (citing *Camden*, 946 F.2d at 772 n.3). These 12 factors are guidelines and are not exclusive. "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *In re Sunbeam Sec's. Litig.*, 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001) (quoting *Camden I*, 946 F.2d at 775). The Eleventh Circuit has "encouraged the lower courts to consider additional factors unique to the particular case." *Camden I*, 946 F.2d at 775.

As explained below, application of these factors to the circumstances of this action warrants an award of 33% of the Settlement Fund in attorney's fees. Indeed, as explained below, courts within the Eleventh Circuit have deemed an award of 33% appropriate in numerous other data breach class action cases based on a similar application of the *Camden I* factors.

### 1.    The time and labor required.

Considerable time and labor were required for Class Counsel to prosecute and settle Representative Plaintiffs' claims.

Prior to and after initiating this action, Class Counsel devoted substantial time to investigating the claims against Watson. Joint Decl. ¶ 5. Class Counsel also expended resources researching and developing the legal claims at issue. *Id.*

The mediation session held before Bennett Picker, Esq. also required substantial preparation. *Id* ¶ 9. Thereafter, significant time was devoted to negotiating and drafting the Settlement Agreement, the preliminary approval process, and to all actions required thereafter pursuant to the preliminary approval order, including researching and preparing this motion and the final approval motion. *Id.*

All of this time was spent without any assurance that the significant commitment of time and effort to this case would result in the payment of any fees. Class Counsel should be amply compensated for the substantial time and labor invested to obtain this outstanding settlement on behalf of the Class and should not be punished for its persistence and efficiency in achieving the positive result for the Class.[3]

---

[3] The Eleventh Circuit has confirmed, in the data breach context, that a lodestar cross-check is not required in determining the reasonableness of a percentage-based fee. *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1280 n.26 (11th Cir. 2021); *see also Dusko*, 2023 WL 12070227, at *8 (citing *Equifax* in noting that "a lodestar cross-check is unnecessary"). "In fact, in the Eleventh Circuit, the lodestar approach should not 'impose' the lodestar approach 'through the back door.'" *Dusko*, 2023 WL 12070227, at *8 (quoting *SEC v. Davison*, No. 8:20-cv-325-MSS-MRM, 2023 WL 2931641, at *3 (M.D. Fla. Mar. 8, 2023)). "The Eleventh Circuit 'made clear in *Camden I* that percentage of the fund

Accordingly, this factor weighs in favor of awarding the requested attorney's fees.

### 2.   The novelty and difficulty of the relevant questions.

The novelty and difficulty of the relevant questions are inherent to data breach litigation. "As a general matter, '[c]onsumer class action litigation is complex and difficult to prosecute.'" *Cain, et al. v. CGM, L.L.C.*, No. 1:23-CV-02604-SEG, 2025 WL 2814398, at *11 (N.D. Ga. Mar. 10, 2025) (quoting *In re Arby's Rest. Grp., Inc. Data Sec. Litig.*, 2019 WL 2720818, at *3). "Data breach class actions, moreover, involve areas of federal and state law that are rapidly evolving." *Id.* (citing *In re Arby's*, 2019 WL 2720818, at *3 ("stating that data breach litigation 'involves the application of unsettled law with disparate outcomes across states and circuits'");

---

is the exclusive method for awarding fees in common fund class actions.'" *Id.* (quoting *In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d 1330, 1362 (S.D. Fla. 2011)). "Lodestar 'encourages inefficiency' and 'creates an incentive to keep litigation going in order to maximize the number of hours included in the court's lodestar calculation.'" *Id.* (quoting *In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d at 1362). "Thus, 'courts in this Circuit regularly award fees based on a percentage of the recovery, without discussing lodestar at all.'" *Id.* (quoting *In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d at 1362)).

Accordingly, courts within the Eleventh Circuit have deemed a lodestar crosscheck unnecessary. *See, e.g.*, *Elder v. Reliance Worldwide Corp.*, No. 1:20-CV-1596-AT, 2025 WL 354513, at *7 (N.D. Ga. Jan. 28, 2025); *Kukorinis v. Walmart, Inc.*, No. 8:22-CV-2402-VMC-TGW, 2024 WL 3226772, at *11 (M.D. Fla. June 28, 2024); *Sherwood v. Horizon Actuarial Servs., LLC*, No. 1:22-cv-10495-ELR (N.D. Ga. Apr. 2, 2024) (ECF No. 94), **attached as Exhibit H**.

*Cotter v. Checkers Drive-In Rests., Inc.*, No. 8:19-cv-1386, 2021 WL 3773414, at *12 (M.D. Fla. Aug. 25, 2021) (noting data breach class actions present "serious risks" due, in part, to "the ever-developing law surrounding data breach cases").

"Such cases can be risky and difficult to litigate." *Cain*, 2025 WL 2814398, at *11 (citing *Desue v. 20/20 Eye Care Network, Inc.*, No. 21-CIV-61275-RAR, 2023 WL 4420348, at *8 (S.D. Fla. July 8, 2023) (collecting cases noting the risks involved in data breach class action litigation); *accord In re T-Mobile Customer Data Sec. Breach Litig.*, No. 4:21-MD-03019-BCW, 2023 WL 11878508, at *16 (W.D. Mo. June 29, 2023), *rev'd on other grounds*, 111 F.4th 849 (8th Cir. 2024) (analyzing the "novelty and difficulty" factor and noting that "[d]ata breach litigation … is difficult and presents cutting edge issues."); *Bahnmaier v. Wichita State Univ.*, No. 220CV02246JARTJJ, 2021 WL 3662875 (D. Kan. Aug. 18, 2021) (analyzing the "novelty and difficulty" factor and noting that "[d]ata-breach litigation is a technical, emerging area of the law" that can include issues such as "Article III standing, the scope of [a defendant's] duty of care, … what damages are recoverable, and whether a data-breach class could be certified").

Successfully navigating these issues weighs in favor of awarding the requested attorney's fees.

### 3. The skill required to properly carry out the legal services.

Courts "consider the 'experience, reputation, and ability of the attorneys' in

determining a fee award.'" *Wave Lengths Hair Salons of Fla., Inc. v. CBL & Assocs. Props., Inc.*, No. 2:16-CV-206-FTM-PAM-MRM, 2019 WL 13037028, at *15 (M.D. Fla. Aug. 22, 2019) (internal citations and quotations omitted). Class action litigation requires certain skills beyond what is typically required to bring individual claims. *See generally* Fed. R. Civ. P. 23. Moreover, data breach cases involve complex and cutting-edge issues regarding, among other things, the adequacy of data security policies and procedures and claimants' damages for purposes of both Article III standing and stating common law or statutory claims. And, perhaps most importantly, the skill of Class Counsel is reflected in the extraordinary result obtained for the Settlement Class.

Here, Class Counsel are well-experienced in this area of practice and have successfully litigated data breach cases to settlement. *See generally* (Doc. 20). Such a qualified team is usually "vital" to the success of complex litigation. *In re Ethicon Physiomesh Flexible Composite Hernia Mesh Prods. Liab. Litig.*, No. 1:170-md-02782-RWS, 2022 WL 17687425, at *11 (N.D. Ga. Nov. 14, 2022). In evaluating the quality of representation by Class Counsel, the Court should also consider opposing counsel. *See Camden I*, 946 F.2d at 772 n.3. Defendants are represented by experienced counsel who are worthy, highly competent adversaries at Shook, Hardy & Bacon, L.L.P. *Walco Invs. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997).

Also, the result achieved in this Settlement is notable because the Parties were able, through capable and experienced counsel, to reach a negotiated Settlement. Joint Decl. ¶ 10. Such deft handling of complex issues has delivered substantive relief to class members in a swift timeframe, providing remedies when needed most, close in time to the incident.

Class Counsel worked on behalf of the Settlement Class to obtain information from Defendant regarding the Data Incident, as well as from their own independent investigation, and used that information (along with their experience and the knowledge gained from other data breach class actions) to negotiate the Settlement. *Id*. ¶ 11. The Settlement reached here is notable for the simplicity of the claims process (and the lack of any needed claims process related to the Digital Image Cash Payments); the relief which addresses the type of injury and repercussions sustained by consumers in the wake of a Data Incident of the type here; the speed with which counsel were able to secure a favorable settlement; and the cooperation between Class Counsel that aided in the ability to resolve this matter efficiently. *Id*. ¶ 12. Therefore, this factor also weighs in favor of approval of the requested fee.

**4.    The preclusion of other employment by the attorney as a result of his acceptance of the case.**

Class Counsel were not precluded from other employment as a result of their acceptance of this case.

### 5. The customary fee in the community.

In data breach class action cases in this community, "a fee award of 33% of the common fund is well within the customary range for attorneys' fees." *Cain*, 2025 WL 2814398, at *11; *see In re Fortra*, 794 F. Supp. 3d at 1223 ("An 'attorneys' fee award' of 33% of a settlement fund 'is within the range of reason under the factors listed in *Camden I*.'").

As recently as December 18, 2025, the Northern District of Georgia awarded one third of a $17,500,000 settlement fund as attorney's fees in a data breach class action case. *See McNally, et al. v. Infosys McCamish Systems, LLC*, No. 1:24-cv-00995-JPB (N.D. Ga. Dec. 18, 2025), ECF No. 81, **attached as Exhibit B**.[4] This award is consistent with awards in numerous other data breach class action cases in the Eleventh Circuit, including the following:

- *Geleng v. Indep. Living Sys., LLC*, No. 23-21060-CV (S.D. Fla. July 7, 2025), ECF No. 106 (awarding one-third of $14,000,000 settlement amount), **attached as Exhibit C**

- *Cravens, et al. v. Garda CL Southeast, Inc., et al.*, No. 9:24-CV-80400-RLR (S.D. Fla. Sept. 11, 2025), ECF No. 68 at 20 (awarding $500,000 in attorney's fees, "which is equal to 33.33% of the $1,500,000.00 Settlement Fund"), **attached as Exhibit D**

- *The Paradies Shops*, No. 1:21-cv-03758-ELR, ECF No. 59 at 7 (awarding $2,268,987.60, "which is 33.33% of the Settlement Fund"), **attached as Exhibit E**

- *Corona-Cantu v. Ingo Money Inc.*, No. 1:24-cv-03023-MHC, 2025 WL

---

[4] The settlement fund amount is set forth in the motion for final approval. (ECF No. 73-1 at 2).

3567122, at \*10 (N.D. Ga. June 17, 2025) (awarding $509,117.04 in attorney's fees from $1,528,880.00 total settlement value)

- *Briggs v. North Highland Co.*, No. 1:22-cv-03640 (N.D. Ga. Mar. 26, 2025), ECF No. 61 at 3 (awarding $216,666.67 in attorney's fees and litigation expenses from $650,000 common fund), **attached as Exhibit F**[5]

- *Cain*, 2025 WL 2814398, at \*12 (awarding $500,000 in attorney's fees from $1,500,000 common fund)

- *In re Fortra*, 794 F. Supp. 3d at 1223 (awarding $2,333,333.33 in attorney's fees, "which is equal to 33.33% of the $7,000,000.00 Settlement Fund")

- *Gilbert v. BioPlus Specialty Pharmacy Servs., LLC*, No. 6:21-CV-2158-RBD-DCI, 2025 WL 99650 (M.D. Fla. Jan. 15, 2025) (awarding $341,666.66 in attorney's fees from $1,025,000.00 common fund)

- *In re Overby-Seawell Company Customer Data Security Breach Litigation*, No. 1:23-md-03056-SDG (N.D. Ga. Dec. 16, 2024), ECF No. 156 at 10 (awarding $2,000,000 in attorney's fees from $6,000,000 common fund), **attached as Exhibit G**

- *In re Lincare Holdings Inc. Data Breach Litig.*, No. 8:22-CV-01472-AAS, 2024 WL 3104286 (M.D. Fla. June 24, 2024) (awarding $2,416,666.67 in attorney's fees from $7,250,000.00 common fund)

- *Horizon Actuarial*, No. 1:22-cv-01495-ELR, ECF No. 94 at 3 (awarding $2,911,148.79 in attorney's fees from $8,733,446.36 common fund), **attached as Exhibit H**

- *Lomedico v. MarineMax, Inc.*, 8:24-cv-01784-MSS-AEP (M.D. FL. June 24, 2025 (awarding $339,268.90 in attorney's fees from $1,018,825.50 common fund).

Because the 33% fee sought here is the customary fee for data breach class

---

[5] The settlement fund amount is set forth in the motion for final approval. (ECF No. 58 at 4).

action cases in the Eleventh Circuit, this factor weighs in favor of awarding the requested attorney's fees.

Class Counsel's request is also reasonable considering the market rate "in the private marketplace where attorneys typically negotiate percentage fee arrangements with their clients." *Farmer v. Humana Inc.*, No. 8:21-CV-1478-MSS-SPF, 2022 WL 22855817, at *6 (M.D. Fla. Dec. 28, 2022), *R&R adopted as modified*, No. 8:21-CV-01478-MSS-SPF, 2023 WL 11877830 (M.D. Fla. Feb. 13, 2023) (quoting *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1341 (S.D. Fla. 2007)). As such, "attorneys regularly contract for contingent fees between 30% and 40% directly with their clients." *Pinto*, 513 F. Supp. at 1341. Indeed, courts within the Eleventh Circuit have recognized that a fee of 33.33% "is at the market rate of what the Class could have negotiated with counsel . . . as a traditional contingency fee arrangement at the outset of the case." *Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1255 (S.D. Fla. 2016) (collecting cases from the Middle District of Florida). Thus, this weighs in favor of granting Class Counsel's fee request.

### 6. Whether the fee is fixed or contingent.

In undertaking to prosecute this case on a contingent fee basis, Class Counsel assumed a significant risk of nonpayment or underpayment. Joint Decl. ¶ 13. The progress of this case to date shows the inherent risk faced by Class Counsel in accepting and prosecuting this matter on a contingency fee basis. *Id.* ¶ 14. That risk

warrants an appropriate fee. Indeed, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees." *Sunbeam*, 176 F. Supp. 2d at 1335 (quoting *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 548 (1988)); *see also In re Continental Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) (holding that when a common fund case has been prosecuted on a contingent basis, plaintiffs' counsel must be compensated adequately for the risk of non-payment); *Ressler v. Jacobson,* 149 F.R.D. 651, 656 (M.D. Fla. 1992) ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award"); *Walters v. Atlanta*, 652 F. Supp. 755, 759 (N.D. Ga. 1985), modified, 803 F.2d 1135 (11th Cir. 1986); *York v. Alabama Senate Bd. of Ed.*, 631 F. Supp. 78, 86 (M.D. Ala. 1986). As Judge King observed:

> Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer... A contingency fee arrangement often justifies an increase in the award of attorney's fees. This rule helps assure that the contingency fee arrangement endures. If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Behrens*, 118 F.R.D. at 548. Despite Class Counsel's effort in litigating this case, Class Counsel remain uncompensated for the time invested, in addition to the significant expenses they advanced. Joint Decl. ¶ 14. There can be no dispute that this case entailed substantial risk of nonpayment for Class Counsel.

Accordingly, this factor weighs in favor of awarding the requested attorney's

fees.

### 7. The time limitations imposed by the clients or the circumstances.

While there were no time limitations imposed by the clients, delivering relief in a timely manner to class members whose Personal Information has been exposed is important and is a significant consideration by Class Counsel when litigating a data breach case. Joint Decl. ¶ 15.

### 8. The results obtained, including the amount recovered for the clients.

Obtaining a Settlement Fund of $10,000,000.00 for 280,278 Settlement Class Members, or for comparative analysis's sake, **$35.67** per person, is an extraordinary result for a data breach case, particularly one with no statutory damages at issue. Below are example orders within the Eleventh Circuit granting preliminary or final approval of common fund settlements in data breach cases arising from cyberattacks, none of which achieves the **$35.67** per Settlement Class Member achieved in this action:

- $4.72 per class member: *Infosys*, No. 1:24-cv-00995-JPB, ECF No. 81 at 6-7 ($17,500,000 fund for approximately 3.7 million individuals), **attached as Exhibit B**[6]
- $3.59 per class member: *Indep. Living.*, No. 23-21060-CV, ECF No. 105 ($14,000,000 fund for approximately 3.9 million individuals), **attached as Exhibit C**

---

[6] The settlement fund amount is set forth in the motion for final approval. (ECF No. 73-1 at 2).

- <u>$4.76 per class member</u>: *CGM*, 2025 WL 2814398, at *12 ($1,500,000.00 fund for 314,857 individuals)

- <u>$7.00 per class member</u>: *In re Fortra*, 794 F. Supp. 3d at 1212, 1215 ($7,000,000 fund for approximately 1,000,000 individuals)

- <u>$10.00 per class member</u>: *In re Overby-Seawell*, ECF No. 156 at 10 ($6,000,000 fund for over 600,000 individuals), **attached as Exhibit G**

- <u>$2.21 per class member</u>: *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, No. 21-MD-02994-RAR, 2024 WL 1554329, at *4, 7 (S.D. Fla. Apr. 10, 2024) ($6,000,000 fund for approximately 2,712,790 individuals)

- <u>$2.50 per class member</u>: *In re Lincare*, 2024 WL 3104286, at *4 ($7,250,000.00 fund for approximately 2.9 million individuals)[7]

- <u>$1.99 per class member</u>: *Horizon Actuarial*, No. 1:22-cv-10495-ELR ECF No. 94 ($8,733,446.36 fund for 4,386,969 individuals), **attached as Exhibit H**[8]

- <u>$0.75 per class member</u>: *Desue v. 20/20 Eye Care Network, Inc.*, No. 21-CIV-61275-RAR, 2023 WL 4420348, at *2 (S.D. Fla. July 8, 2023) ($3,000,000 fund for approximately 3,976,023 individuals).

Accordingly, this factor weighs in favor of awarding the requested attorney's fees.

### 9.    The experience, reputation, and ability of the attorneys.

Class Counsel have a strong reputation in the area of complex litigation, in particular privacy and data breach class action litigation. Joint Decl. ¶ 3; *see also*

---

[7] The class size is set forth in the motion for final approval. (ECF No. 114 at 7).

[8] The settlement fund amount and class size are set forth in the motion for final approval. (ECF No. 89-1 at 6).

(Doc. 20). Class Counsel have successfully litigated and settled similar cases across the country and, in this case, have been challenged by highly experienced and skilled counsel who deployed very substantial resources on Watson's behalf. Joint Decl. ¶ 4.

Accordingly, this factor weighs in favor of awarding the requested attorney's fees.

### 10.    The "undesirability" of the case.

Data breach litigation "clearly present[s] novel and difficult issues that made it an undesirable undertaking." *See Bahnmaier v. Wichita State Univ.*, No. 220CV02246JARTJJ, 2021 WL 3662875, at *3 (D. Kan. Aug. 18, 2021) (analyzing the "undesirability" factor and noting issues such as "Article III standing, the scope of [a defendant's] duty of care, … what damages are recoverable, and whether a data-breach class could be certified"). Put simply, "[d]ata breach litigation is risky." *In re T-Mobile Customer Data Sec. Breach Litig.*, 2023 WL 11878508, at *16. That Class Counsel persisted in prosecuting this case in the face of such challenges weighs in favor of awarding the requested attorney's fees.

Accordingly, this factor weighs in favor of awarding the requested attorney's fees.

### 11.    The nature and the length of the professional relationship with the clients.

Class Counsel have had professional relationships with Representative

Plaintiffs since this action was initiated. Class Counsel and Representative Plaintiffs have worked together through these proceedings.

### 12.   Fee awards in similar cases.

"The final *Johnson* factor is awards in similar cases, 'within and without the court's circuit.'" *Flores v. Acorn Stairlifts, Inc.*, No. 619CV844ORL40GJK, 2020 WL 9549901, at *4 (M.D. Fla. June 22, 2020), *report and recommendation adopted*, No. 619CV844ORL78GJK, 2020 WL 9549900 (M.D. Fla. June 26, 2020) (quoting *Johnson*, 488 F.2d at 717-19).

Representative Plaintiffs have already identified numerous data breach class action cases within the Eleventh Circuit awarding 33% of a common fund in attorney's fees. *See id.* ("For this factor, Plaintiffs refer to the cases they previously cited regarding awards of attorney's fees with similar percentages in class actions under the factor of customary fees in the community.")

Outside of Eleventh Circuit, courts similarly award 33% of a common fund in attorney's fees. *See, e.g.*, *In re Snowflake, Inc. Data Sec. Breach Litig.*, No. 2:24-MD-3126-BMM, 2025 WL 3004886, at *4 (D. Mont. Oct. 23, 2025); *Cunningham v. DG3 N. Am., Inc.*, No. 2:24-CV-07385, 2025 WL 2919331, at *11 (D.N.J. Oct. 14, 2025); *Krant v. UnitedLex Corp.*, No. 23-2443-DDC-TJJ, 2024 WL 5187565, at *9 (D. Kan. Dec. 20, 2024); *In re CorrectCare Data Breach Litig.*, No. CV 5:22-319-DCR, 2024 WL 4211480, at *4 (E.D. Ky. Sept. 17, 2024); *In re Novant Health,*

*Inc.*, No. 1:22-CV-697, 2024 WL 3028443, at *11 (M.D.N.C. June 17, 2024).

In sum, the *Camden I* factors support the reasonableness of awarding Representative Plaintiffs 33% of the Settlement Fund, or $3,300,000.00, in attorney's fees.

### 13.    There is no objection to the requested fee.

With regard to other relevant factors (per the *Sunbeam* decision, *supra*), no class member has yet objected[9] to the Settlement or its provision on attorneys' fees. The amount of attorneys' fees that Class Counsel would request was plainly communicated to the Settlement Class Members on the direct notices sent. This weighs strongly in favor of the reasonableness of the fee requested. *See, e.g.*, *Allapattah Services, Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1204 (S.D. Fla. 2006) ("The lack of significant objection from the Class supports the reasonableness of the fee request.") (collecting cases); *Gevaerts v. TD Bank*, No. 14-20744, 2015 WL 6751061, at *10 (S.D. Fla. Nov. 5, 2015).

### 2.    The Court Should Award the Requested $77,864.67 in Litigation Costs.

The litigation costs to date incurred in connection with this action are as follows:

---

[9] The objection deadline is January 6, 2026.

### *Morgan & Morgan*

| Court costs | $405.00 |
|---|---|
| Dark web expert | $64,050.00 |
| Mediator | $6,000.00 |
| Process Server | $186.20 |
| **Total** | **$70,641.20** |

### *Milberg*

| Court costs | $574.35 |
|---|---|
| Mediator | $6,000.00 |
| Process Server | $166.50 |
| **Total** | **$6,740.85** |

### *Shamis & Gentile*

| Court costs | $405.00 |
|---|---|
| Process Server | $77.62 |
| **Total** | **$482.62** |

Joint Decl. 16. These were reasonably incurred in, and necessary to, the prosecution of this case and should be reimbursed.

Accordingly, Representative Plaintiffs request an award of $77,864.67 in litigation costs.

### 3.    The Court Should Award the Requested Service Awards.

"As courts in the Eleventh Circuit have explained, state law[10] governs the issue of Service Awards in [a] diversity action." *Dusko*, 2023 WL 12070227, at *9 (citations omitted).[11]

Recognizing this, courts within the Eleventh Circuit have awarded service awards in data breach class action cases, including the following:

---

[10] Florida law permits providing service awards to class representatives. *See Venerus v. Avis Budget Car Rental, LLC*, 674 F. Supp. 3d 1107 (M.D. Fla. 2023) ("In *Altamonte Springs Imaging, L.C. v. State Farm Mut. Auto. Ins. Co.*, 12 So. 3d 850, 857 (Fla. 3d DCA 2009), the court expressly approved a $10,000 service award to a class representative, noting that '[t]he position as fiduciary for the class is less an honor than a headache.'").

[11] *See, e.g.*, *Sanchez v. State Farm Mut. Auto. Ins. Co.*, No. 3:21CV-00372-TJC-LLL, 2025 WL 2460560, at *5 (M.D. Fla. Aug. 26, 2025) ("The Court also finds the Named Plaintiffs' request for a Service Award is within the appropriate range. The Named Plaintiffs put in substantial time representing the Settlement Class, including preparing extensive investigation, preparing discovery responses, participating in negotiations, and attending regular meetings and phone conferences with Class Counsel. The Named Plaintiffs accepted these burdens to seek relief for others allegedly harmed. They played a vital role in obtaining the Settlement. Accordingly, this Court finds, as reasonable, a Service Award for the Named Plaintiffs in the amount of $10,000.00 each."); *Elder v. Reliance Worldwide Corp.*, No. 1:20-CV-1596-AT, 2025 WL 354513, at *8 (N.D. Ga. Jan. 28, 2025) (approving service awards totaling $35,000 for seven plaintiffs because the case was a diversity action); *Tims v. LGE Cmty. Credit Union*, No. 1:15-CV-04279-TWT, 2023 WL 11915734 (N.D. Ga. Nov. 29, 2023) ("As this Court, and other courts in the Eleventh Circuit have explained, state law governs the issue of Service Awards in diversity actions.") (awarding $10,000 service award); *Arnold v. State Farm Fire & Cas. Co.*, No. 2:17-CV-148-TFM-C, 2023 WL 7308098 (S.D. Ala. Nov. 6, 2023) (awarding service awards of $20,000 and $15,000); *Mitchell v. Allstate Vehicle & Prop. Ins. Co.*, No. 2:21-CV-347-TFM-B, 2023 WL 5004064, at *6 (S.D. Ala. Aug. 3, 2023) ("The Court agrees with its several sister courts in this Circuit that *Johnson v. NPAS*

- *Infosys*, No. 1:24-cv-00995-JPB, (approving $2,500 service awards), **attached as Exhibit B**

- *Ramirez v. Paradies Shops, LLC*, No. 1:21-cv-03758-ELR (N.D. Ga. July 24, 2025) (approving $10,000 service award), **attached as Exhibit E**

- *Ingo Money*, 2025 WL 3567122, at *11 (awarding $2,500 service award and noting that "courts in the Eleventh Circuit have recently found service awards are permitted for common law claims in diversity cases.")

- *In re Parkmobile*, No. 1:21-cv-02182-SCJ (N.D. Ga. May 6, 2025) (awarding $5,000 service award to each of seven class representatives and noting that "[c]ourts in the Eleventh Circuit continue to find service awards are permitted for common law claims in diversity cases."), **attached as Exhibit I**

- *Wang v. Corp. of Mercer Univ.*, No. 5:23-CV-00193-TES, 2025 WL 1136132, at *3 (M.D. Ga. Apr. 17, 2025) (approving service awards of $1,500 for each class representative)

- *Cain*, 2025 WL 2814398, at *12 (approving service awards totaling $11,500 for seven plaintiffs because the case was a diversity action)

---

*Solutions, LLC*, 975 F.3d 1244 (11th Cir. 2020), is inapplicable in diversity jurisdiction cases where the underlying claims arise under state law."); *Venerus*, 674 F. Supp. 3d at 1110-11 (awarding $25,000 service award); *South v. Progressive Select Ins. Co.*, No. 19-CV-21760-WPD, 2023 WL 2733548, at *5 (S.D. Fla. Mar. 21, 2023) (recommending approval of $10,000 service awards); *Roth v. GEICO Gen. Ins. Co.*, No. 16-62942-CIV, 2020 WL 10818393, at *3 (S.D. Fla. Oct. 8, 2020) ("In diversity cases, federal courts have held that the issue of whether a service award is appropriate is governed by state law.... Florida law permits incentive award in class actions."); *Junior v. Infinity Ins. Co.*, Case No. 6:18-cv-1598-WWB-EJK (M.D. Fla.), ECF No. 79 at 3 ("*Johnson I* examined federal common law, based on a federal cause of action, to arrive at its decision. There is nothing in *Johnson I* to suggest that it is applicable to cases arising under state law. The Eleventh Circuit chose not to rehear *Johnson I en banc*, and the denial did not provide any additional analysis.").

- *Ebert v. PRGX Global*, No. 1:23-cv-04233-TWT (N.D. Ga. Jan. 23, 2025) (data breach case) (approving service awards of $1,750 for each of two class representatives), **attached as Exhibit J**

- *North Highland*, ECF No. 61 at 3 (approving service award of $2,500 for class representative because the case was a diversity action), **attached as Exhibit F.**

Here, as explained above, Representative Plaintiffs' participation in this action as named plaintiffs and agreement to act as class representatives resulted in a remarkable result for Settlement Class Members. Without Representative Plaintiffs' willingness to bring this action, these claimants may have received nothing. Finally, Representative Plaintiffs spent time reviewing and approving the complaint and the settlement agreement. Joint Decl. ¶ 17. Given these considerations, service awards of $2,500 each are appropriate.

## IV.    CONCLUSION

For the reasons stated above, Representative Plaintiffs respectfully request that the Court award them service awards of $2,500.00 each, litigation costs of $77,864.67, and attorney's fees of $3,300,000.00.

## LOCAL RULE 3.01(g) CERTIFICATION

Watson takes no position on an application by Proposed Class Counsel for an award of attorneys' fees not to exceed 33% of the Settlement Fund, and litigation costs and expenses in an amount not to exceed $100,000.00, subject to Court

approval.   S.A. ¶ 7.2.  Watson takes no position on an application by Representative Plaintiffs for service awards not to exceed $2,500.00 each.  *Id.* ¶ 7.3.  Plaintiffs respectfully submit, however, that this motion should not be ruled upon until after the March 9, 2026 final approval hearing.

Dated: December 23, 2025                    Respectfully submitted,

                                            /s/ *Ryan D. Maxey*
                                            Patrick A. Barthle II
                                            **MORGAN & MORGAN**
                                            **COMPLEX LITIGATION GROUP**
                                            Florida Bar No. 99286
                                            E-Mail: pbarthle@ForThePeople.com
                                            201 N. Franklin Street, 7th Floor
                                            Tampa, Florida 33602
                                            Telephone: (813) 229-4023
                                            Facsimile: (813) 222-4708

                                            Gary M. Klinger (*pro hac vice*)
                                            **MILBERG COLEMAN BRYSON**
                                            **PHILLIPS GROSSMAN PLLC**
                                            227 W. Monroe Street, Suite 2100
                                            Chicago, IL 60606
                                            Tel: 866-252-0878
                                            Fax: 865-522-0049
                                            gklinger@milberg.com

                                            *Class Counsel*

                                            Ryan D. Maxey
                                            **MAXEY LAW FIRM, P.A.**
                                            107 N. 11th St. #402
                                            Tampa, Florida 33602

Telephone: (813) 448-1125
Email: ryan@maxeyfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served via email via the CM/ECF system on all counsel of record on this 23rd day of December 2025.

*/s/ Ryan D. Maxey*
Ryan D. Maxey