**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

CHARLES VIVIANI and DAVID THORPE, individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

WATSON CLINIC, LLP,

Defendant.

**Case No. 8:24-cv-02157-SDM-LSG**

# PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Fed. R. Civ. P. 23, Plaintiffs[1] respectfully submit this Unopposed Motion for Final Approval of Class Action Settlement, supported by a Joint Declaration of Class Counsel ("Joint Decl."), attached as ***Exhibit B***, and the Declaration of Andrea Dudinsky of Kroll Settlement Administration LLC in connection with Final Approval of Settlement ("Admin. Decl."), attached as ***Exhibit C***.

On October 10, 2025, this Court preliminarily approved the Settlement (Doc. 33, and subsequently amended on October 14, 2025 at Doc. 34), which provides for substantial Settlement Class Member Benefits, including a non-reversionary, all cash $10,000,000.00 Settlement Fund, from which Settlement Class Members may either

[1] All capitalized terms used herein shall have the same meanings as those defined in Section IV of the Settlement Agreement, attached as ***Exhibit A*** and previously filed at Doc. 31-1.

automatically receive or elect to receive: (1) Digital Image Cash Payments; (2) reimbursement for Ordinary Out-of-Pocket Losses; (3) reimbursement for Extraordinary Losses and Attested Time; or (4) Residual Cash Payments. The Settlement Fund will be used to pay all approved Settlement Class Member benefits, all Costs of Claims Administration, service award payments approved by the Court, and any Court-awarded attorneys' fees and costs.

Plaintiffs and Class Counsel now move the Court for Final Approval.[2] The Settlement satisfies all the criteria for Final Approval and there has been an overwhelmingly positive reaction from the Settlement Class, with no objections and only 2 opt-outs (out of almost 240,000 Class Members). *See* Admin Decl., ¶ 20. The response of the Settlement Class affirms the Court's initial conclusion that the Settlement is fair, reasonable, and adequate. *See* (Doc. 34). Class Counsel has fully evaluated the strengths, weaknesses, and equities of the Parties' respective positions and believe the proposed Settlement fairly resolves their respective differences. For all the reasons set forth herein, the Court should grant Final Approval of the Settlement and Class Counsel's Motion for Attorneys' Fees, Costs, and Service Awards.

## I. INTRODUCTION AND PROCEDURAL HISTORY

On or around February 6, 2024, Defendant discovered that an unauthorized third party gained access to a limited portion of its network starting on January 26, 2024. SA ¶ 2. Watson's investigation of the Data Incident determined that the threat

[2] Plaintiffs' previously moved for an award of reasonable attorneys' fees, litigation costs, and service awards. (Doc. 37).

actor accessed data pertaining to Watson's current and former patients, including name, address, birthdate, Social Security number or similar government identifier, driver's license number, financial account information, and/or medical information, which may include details such as diagnoses, treatments, pre- and/or post-operative medically necessary images, or medical record numbers. *Id*. Watson had these pre- and post-operative medically necessary photographic images because they were required by law to collect and maintain them.

As a result of the Data Incident, the Parties believed that the PII and PHI of 280,278 individuals—including Plaintiffs and Settlement Class Members—was potentially impacted. *Id*. ¶ 1.28. However, as shown in the Kroll Declaration in support of this motion, after all de-duplication of records, the Class size here is 239,387 (which makes the recovery obtained even more substantial on a per person basis).

After Watson provided initial notice of the Data Incident in or around August 2024, Plaintiff Viviani filed a putative Class Action Complaint in the United States District Court for the Middle District of Florida, bringing claims for negligence, breach of implied contract, breach of fiduciary duty, and violation of the Florida Deceptive and Unfair Trade Practices Act. SA ¶ 3. Plaintiff Thorpe filed a second class action case, and the cases were consolidated. *Id.* After subsequent investigation, Watson provided additional notice of the incident in February 2025. *Id*. ¶ 4.

Subsequently, the Parties determined that it was advisable to engage in voluntary settlement discussions. In anticipation of the mediation, Plaintiffs propounded informal discovery requests on Defendant to which Defendant responded

by providing information related to, among other things, the nature and cause of the Data Incident, the number and geographic location of individuals that received notice of the Data Incident, and the specific type of information potentially impacted in the Data Incident. Plaintiffs and Class Counsel reviewed key documents and information, which, in consultation with their data security experts, allowed them to confidently evaluate the strengths and weaknesses of Plaintiffs' claims and prospects for success at class certification, summary judgment, and trial. The Parties also exchanged detailed mediation statements outlining their respective positions related to liability, damages, and settlement.

On March 19, 2025, the parties participated in a full-day mediation facilitated by an experienced mediator, Bennett Picker. SA ¶ 5. After a full day of negotiations, the parties failed to reach an agreement; however, the parties continued discussions and eventually reached an agreement in principle, the terms of which were later finalized in this Settlement Agreement and the attached exhibits. *Id.*

The Settlement Agreement provides for the full and final resolution, discharge and settlement of all claims and causes of action asserted, or that could have been asserted, against Watson arising out of or relating to the Data Incident, by and on behalf of the Representative Plaintiffs and Settlement Class Members and any other such actions by and on behalf of any other persons in the United States relating to the Data Incident.

On April 29, 2025, the Parties filed a Notice of Settlement as a part of their Third Joint Status Report Regarding Mediation. (Doc. 27). In subsequent weeks, the

Parties continued to negotiate certain terms of the Agreement, including the terms of the Releases, the Claims Administrator and its respective duties, the Notice Program and Notices, the Claim process and Claim Forms, and proposed schedule of post-settlement events. During this time, the Parties worked diligently to finalize the terms of the Agreement and ancillary documents. The Agreement was executed on July 18, 2025.

Plaintiffs filed their Unopposed Motion for Preliminary Approval of Class Action Settlement and Memorandum of Law on July 18, 2025. (Doc. 31). The Court granted that motion on October 10, 2025, and subsequently amended the preliminary approval order on October 14, 2025. (Docs. 33 and 34).

Thereafter, the Settlement Administrator commenced the Notice Program and began overseeing the Claim submission process. *See generally* Admin. Decl. The Notice Program has now been completed in full compliance with the Agreement and the Preliminary Approval Order, and the Claim Deadline has passed. *Id.*

## II. SUMMARY OF THE SETTLEMENT

**A. Settlement Class -** Plaintiffs seek Final Approval of the Settlement on behalf of the following Settlement Class:

> all individual U.S. residents to whom Watson sent notice of the Data Incident.

Excluded from the Settlement Class are: (1) the Judge and Magistrate Judge presiding over the Lawsuits, any members of the Judges' respective staffs, and immediate members of the Judges' respective families; (2) officers, directors, members and

shareholders of Watson; (3) persons who timely and validly request exclusion from and/or opt-out of the Settlement Class and the successors and assigns of any such excluded persons; and (4) any person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity or occurrence of the Data Incident or who pleads nolo contendere to any such charge.. SA ¶ 1.28.

**B. Settlement Fund -** The Settlement Agreement provides for a non-reversionary $10,000,000.00 cash Settlement Fund. SA ¶ 2.1. The Settlement Fund will be used to pay: (1) Digital Image Cash Payments; (2) reimbursement for Ordinary Out-of-Pocket Losses; (3) reimbursement for Extraordinary Losses and Attested Time; (4) Residual Cash Payments; (5) notice and administration costs; (6) service award payments approved by the Court; and (7) attorneys' fees and expenses awarded by the Court. *Id*.

**C. Settlement Class Member Benefits -** Settlement Class Members (depending upon their circumstances) could elect to receive the following benefits:

1. Digital Image Cash Payments. Each Settlement Class Member who had one or more digital images published on the dark web as a result of the Data Incident will be sent a cash payment via check ("Digital Image Cash Payment")—without the need to file a claim form—according to the contents of the digital image, as outlined in the Settlement Agreement and Unopposed Motion for Preliminary Approval. (Docs. 31 and 31-1).

2. Reimbursement for "Ordinary" Out-of-Pocket Losses. All Settlement Class Members may submit a claim for Ordinary Out-of-Pocket Losses up to $500 per individual. SA ¶ 2.4. "Ordinary Out-of-Pocket Losses" are unreimbursed costs, losses, or expenditures incurred by a Class member in responding to notice of the Data Incident that were incurred between January 26, 2024, and the Claims Deadline.

3. Reimbursement for "Extraordinary" Losses and Attested Time. In addition to submitting a claim for Ordinary Out-of-Pocket Losses, Settlement Class Members who believe they have suffered identity theft, fraud, or other extraordinary losses may submit a claim for Extraordinary Losses and Attested Time up to $6,500 per individual. SA ¶ 2.5. "Extraordinary Losses" are unreimbursed costs, losses, or expenditures incurred by a Settlement Class Member that are fairly traceable to the Data Incident, and are costs, losses, or expenditures that are not reimbursable as Ordinary Out-of-Pocket Losses. SA ¶ 2.5.1. Extraordinary Losses may include, without limitation, the unreimbursed costs, losses, or expenditures incurred as a result of identity theft or identity fraud, falsified tax returns, or other possible misuse of the Settlement Class Member's personal information. SA ¶ 2.5.2.

4. Residual Cash Payment. In addition to, or in the alternative to, making Claims for Ordinary Out-of-Pocket Losses and/or Extraordinary Losses and Attested Time, Settlement Class Members may elect to receive a cash payment of up to $50 on a claims-made basis. SA ¶ 2.8. All Settlement Class Members with an approved claim will receive the Residual Cash Payment, if funds are available.

5. Business Practice Commitments. For a period of three years following the execution of a formal settlement agreement, Watson commits to pay for, implement and continue certain data-security enhancements and business practices. SA ¶ 2.10. Due to their confidential and sensitive nature, those enhancements and practices are not being publicly disclosed but have been shared with Class Counsel, who agree to maintain the confidentiality of that information. *Id.*

**D. Release -** The Settlement Agreement provides that Watson will receive a Release for all Released Claims. SA ¶ 6.1. The Released Claims are narrowly tailored and only address claims arising out of or relating to the Data Incident. *Id*. ¶ 1.24. Plaintiffs and Settlement Class Members who did not timely and validly opt-out of the Settlement Class will be bound by the terms of the Settlement.

**E. Disposition of Residual Funds -** In the event there are unclaimed funds remaining in the Settlement Fund, funds shall be redistributed until it is economically unfeasible to do so, and, if still unclaimed, disbursed to a *cy pres* recipient to be agreed upon by the parties and approved by the Court or, if they cannot agree, selected by the Court.

**F. Attorneys' Fees and Costs -** Pursuant to the Agreement and consistent with the Notice to the Settlement Class, Plaintiffs have requested an attorneys' fee award of 33% of the Settlement Fund ($3,300,000.00), reasonable litigation expenses of $77,864.67, and service awards of $2,500.00 each. (Doc. 37). Plaintiffs' request and the authority supporting its reasonableness are detailed in the fee motion previously

filed on December 23, 2025. The Notices clearly advised the Settlement Class of the amount of attorneys' fees Class Counsel intended to request at Final Approval, and currently no Settlement Class Member has objected to the amount requested. *See generally* Admin Decl. and Exhibits D and E thereto, *see also* Joint Decl. ¶ 26.

## III. NOTICE PROGRAM, CLAIMS, OPT-OUTS, AND OBJECTIONS

**A. Notice Program -** The Settlement Administrator sent the CAFA Notices required by 28 U.S.C. § 1715. Admin. Decl. ¶ 4. On or about October 24, 2025, and October 27, 2025, Kroll received multiple data files from Defendant. *Id.* ¶ 5. The data files contained the names and addresses of Settlement Class Members. Kroll reviewed the data files and removed duplicative records, resulting in 239,387 unique records in the Class List. *Id*. Additionally, in an effort to ensure that Notices would be deliverable to Settlement Class Members, Kroll ran the Class List through the USPS's National Change of Address ("NCOA") database and updated the Class List with address changes received from the NCOA. *Id.*

Once the Class List was prepared, direct notice commenced. Settlement Class Members who were eligible for a Digital Image Cash Payment—depending upon which of the seven defined groups they fell into as set forth in paragraph 2.2 of the Settlement Agreement—were sent Notice via letter ("Digital Image Cash Payment Letter"). Admin Decl. ¶ 9. On November 7, 2025, Kroll caused the mailing of 637 Digital Image Cash Payment Letters via first-class mail.[3] *Id.*

---

[3] An additional four Digital Image Cash Payment payees were found, and notices mailed, through Kroll's efforts, for a total of 641 Digital Image Cash Payments. Admin. Decl. ¶ 11.

Settlement Class Members not entitled to a Digital Image Cash Payment were sent Notice via postcard ("Postcard Notice"). *Id.* ¶ 10. On November 7, 2025, Kroll caused the mailing of 238,740 Postcard Notices via first-class mail. *Id.*

On December 1, 2025 and December 31, 2025, Defendant Counsel's collectively provided additional information to Kroll regarding a total of six of the ten Digital Image Cash Payment Records that could not be sent Notice. Admin Decl. ¶ 11. Missing addresses were provided for four of the Settlement Class Members, and Kroll was notified that two of the Settlement Class Members were deceased. On both occasions, Kroll promptly caused to be mailed Digital Image Cash Payment Letters collectively to all four Settlement Class Members. *Id.*

The direct mail notice program was highly successful. Following all Notice re-mailings, Kroll has reason to believe that direct Notices likely reached 237,411 of the 239,387 Settlement Class Members, which equates to a reach rate of the direct mail notice of approximately 99.17%. Admin Decl. ¶ 14. This reach rate is consistent with other court-approved, best-practicable notice programs and Federal Judicial Center Guidelines, which state that a notice plan that reaches[4] over 70% of targeted class members is considered a high percentage and the "norm" of a notice campaign.[5] *Id.*

---

[4] FED. JUD. CTR., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010), *available at* https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf. The guide suggests that the minimum threshold for adequate notice is 70%.

[5] Barbara Rothstein and Thomas Willging, Federal Judicial Center Managing Class Action Litigation: A Pocket Guide for Judges, at 27 (3d ed. 2010).

The direct notice here was supplemented and supported by other means of notice. On October 15, 2025, Kroll established a toll-free telephone number, (833) 630-5410, for Settlement Class Members to call and obtain additional information regarding the settlement through an Interactive Voice Response ("IVR") system and by being connected to a live operator. Admin Decl. ¶ 6. As of February 20, 2026, the IVR system has received 659 calls, and 386 callers have been connected to live operators. *Id.* On that same day, Kroll designated a post office box with the mailing address *Watson Clinic Data Incident,* c/o Kroll Settlement Administration LLC, P.O. Box 225391, New York, NY 10150-5391, in order to receive requests for exclusions, Claim Forms, and correspondence from Settlement Class Members. Admin Decl. ¶ 7.

On November 6, 2025, Kroll created a dedicated settlement website entitled www.WatsonDataSettlement.com. Admin Decl. ¶ 8. The settlement website "went live" on November 7, 2025, and contains a summary of the settlement, important dates and deadlines, contact information for the Claims Administrator, answers to frequently asked questions, downloadable copies of relevant documents, including the Settlement Agreement, amended Preliminary Approval Order, Long Form Notice, Claim Form, and Motion for Attorneys' Fees and Expenses and Service Awards, and allowed Settlement Class Members an opportunity to file a Claim Form online. *Id.*

The Claims Deadline for Settlement Class Members to submit a Claim Form was February 5, 2026. Admin. Decl. ¶ 15. Kroll has received 7,945 Claim Form submissions. *Id.* ¶ 16. Kroll is still in the process of reviewing and validating Claim Forms. *Id*. When combined with the presumptive 641 Digital Image Payments (for

which no claim need be filed), the effective claims rate is 3.58% (8,586 divided by 239,387).

The deadline to submit a request for exclusion from the Settlement was January 6, 2026. Admin Decl. ¶ 19. Kroll received two timely opt-out requests. *Id.* ¶ 20. The deadline to submit an objection to the Settlement was also January 6, 2026. *Id.* ¶ 19. Objectors were not instructed to send objections to Kroll, and Kroll is not aware of any objection. *Id.* ¶ 20. No objections were filed with the Court, and neither Class Counsel nor counsel for Watson received any objections. Joint Decl. ¶ 26.

## IV. ARGUMENT

The procedure for review of a proposed class action settlement is a well-established, two-step process. 4 NEWBERG ON CLASS ACTIONS, § 11.25, at 38–39 (4th ed. 2002). In the first step, the Court determines, as it did here, whether the proposed settlement should be preliminarily approved. *See* David F. Herr, Annotated Manual for Complex Litigation § 21.632 (4th ed. 2004). In the second step, after hearing from any objectors and being presented with declarations and materials to support the fairness of the settlement, the Court makes a final decision whether the settlement should be finally approved. *See id.* §§ 21.633–35. In deciding whether to approve the Settlement, the Court will analyze whether it is "fair, adequate, reasonable, and not the product of collusion." *Leverso v. Lieberman*, 18 F.3d 1527, 1530 (11th Cir. 1994). The Court's "judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Wilson v. Everbank*, 2016 WL 457011, at *6 (S.D. Fla. Feb. 3, 2016)

(quoting *Nelson v. Mead Johnson & Johnson Co.*, 484 Fed. App'x 429, 434 (11th Cir. 2012)).

Under the applicable legal standards, this Settlement should be finally approved by the Court, as shown below.

### A. The Settlement Class Should Be Finally Certified, and the Appointments of Class Representatives, Class Counsel, and the Settlement Administrator Should Be Affirmed.

The Unopposed Motion for Preliminary Approval detailed the bases for certifying the Settlement Class pursuant to Fed. R. Civ. P. 23(a) and (b)(3). (Doc. 31). In compliance with Fed. R. Civ. P. 23(e), the Court's Preliminary Approval Order details its findings for why it would be likely to certify the Settlement Class at the Final Approval stage, finding the following requirements were all met: standing, ascertainability, numerosity, commonality, typicality, adequacy of representation, predominance, and superiority. (Docs. 33 and 34). Nothing has changed since Preliminary Approval was granted (other than that the Class size is now 239,387, which still easily satisfies numerosity) and the Settlement Class was provisionally certified. Therefore, for brevity's sake, Plaintiffs do not repeat their arguments in support of Settlement Class certification and instead incorporate their arguments from Plaintiffs' Unopposed Preliminary Approval Motion by reference. (Doc. 31 at 12–17).

Plaintiffs' appointment as the Class Representatives should be affirmed as they remain adequate representatives. Joint Decl. ¶¶ 41. For the same reasons the Court found them adequate under Fed. R. Civ. P. 23(a)(4), the Court should also affirm the designation of Patrick A. Barthle of Morgan & Morgan Complex Litigation Group

and Gary M. Klinger of Milberg PLLC as Class Counsel. Federal Rule of Civil Procedure 23(g)(1)(A)'s four factors for appointing class counsel for a certified class are (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class." The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]" Fed. R. Civ. P. 23(g)(1)(B). Here, Class Counsel are qualified and competent leaders in the field with extensive experience prosecuting and resolving complex class actions, including data breach class actions. Before commencing litigation, they investigated the claims against Defendants, interviewed potential plaintiffs, consulted with data experts, and gathered information regarding the Cybersecurity Incident. Joint Decl. ¶ 40. Class Counsel has devoted substantial time and resources to this Action and will continue to do so. *Id.*

For the foregoing reasons, the Settlement Class should be finally certified, and the prior appointments of Class Representatives and Class Counsel affirmed.

**B. The Settlement Should be Finally Approved.**

The Preliminary Approval Order found that "the settlement appears to resolve this action fairly, adequately, and reasonably" and merited preliminary approval under the Rule 23 and the *Bennett* factors. (Doc. 34 at 2-3). Now, the Court should grant Final Approval considering those same *Bennett* factors and the Rule 23(e)(2) factors,

being able to now judge the Settlement Class's positive reaction to the Settlement with no objection, only two opt-outs, and receipt of over 7,900 Claims (in addition to the presumptive 641 Digital Image Cash Payments, for which no claim needed to be filed).

The Rule 23(e)(2) factors are:

> (A) the class representatives and class counsel adequately represented the class;
> (B) the proposal was negotiated at arms' length;
> (C) the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

The *Bennett* factors include the following: (1) the likelihood of success at trial; (2) the range of possible recoveries; (3) the point on or below the range of possible recoveries at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and degree of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved. *See Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

1. **Adequacy of Representation (Rule 23(e)(2)(A)) -** As this Court's sister Court held in *In re Mednax Services, Inc., Customer Data Security Breach Litigation*, "the first factor heavily weighs in favor of granting preliminary approval because both Class Counsel and the Class Representative have adequately represented the Class." No. 21-MD-02994-RAR, 2024 WL 1554329, at *6 (S.D. Fla. Apr. 10, 2024). Here, Plaintiffs are adequate representatives. Plaintiffs' respective interests are coextensive and do not

conflict with the interests of the Settlement Class. Joint Decl. ¶ 42. Plaintiffs have the same interest in the Settlement relief, and the absent Settlement Class Members have no diverging interests. *Id*. Likewise, Class Counsel are experienced in complex class action litigation, including similar data breach actions, and they devoted substantial time and resources to vigorous litigation. *See id*., ¶¶ 38. Class Counsel also consulted data security experts, enabling them to gain an understanding of the evidence related to central questions in the Litigation and prepared them for well-informed settlement negotiations. *See id* ¶ 40..; *see also Mednax*, 2024 WL 1554329 at *6. Class Counsel used informal discovery to learn what caused the Data Incident and what personal information was impacted in the Data Incident, before attending a full-day mediation session. Joint Decl. ¶¶ 14-18. Class Counsel used their experience in complex class action litigation, including similar data breach actions, and devoted substantial time and resources to vigorous litigation. *See Id.* ¶¶ 38.

The Representative Plaintiffs have demonstrated their adequacy by (i) having a genuine personal interest in the outcome of the case; (ii) selecting well-qualified Class Counsel; (iii) producing information and documents to Class Counsel to permit investigation and development of the complaints; (iv) being available as needed throughout the litigation; and (v) monitoring the Litigation. *Id.* ¶ 42.

2. **The Settlement Was Negotiated at Arm's Length (Rule 23(e)(2)(B) and *Bennett* Factor 6) -** The Settlement is without collusion and the result of good faith, informed, and arm's-length negotiations between experienced attorneys who are

familiar with class action litigation and with the legal and factual issues at stake, and with the assistance of mediator Bennett Picker, Esq. *Id.* ¶¶ 18. "The fact that the Settlement was achieved through well-informed, arm's-length, and neutrally supervised negotiations weighs in favor of granting preliminary approval under Rule 23(e)(2)(B)." *Mednax*, 2024 WL 1554329 at *6; *Petersen v. Am. Gen. Life Ins. Co.*, 3:14-CV-100-J-39JBT, 2019 WL 11093816, at *6 (M.D. Fla. Oct. 22, 2019) (Davis, J.) (involvement of a mediator indicates that negotiations protect and further class interests). Though the Settlement was reached at an early stage, the record reflects that this Litigation was thoroughly investigated by counsel experienced in data breach litigation. Moreover, Class Counsel's informal exchange of discovery and mediation with an experienced mediator has ensured a fair, reasonable, and adequate Settlement. *Id*. *See, e.g., Lomedico v. MarineMax, Inc.,* No. 8:24-cv-01784-MSS-AEP, ECF No. 38 (M.D. Fla. June 24, 2025) (Judge Scriven granting Final Approval in a data breach case where parties exchanged informal discovery and engaged in arm's-length negotiations); *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014) (approving settlement where parties settled relatively early with experienced counsel who had sufficient information to evaluate merits of the case, engaged in full-day mediation, and engaged in post-mediation discovery).

3. **The Settlement Class Supports the Settlement (*Bennett* Factor 5) -** The objection and opt-out deadlines were January 6, 2026. Admin. Decl. ¶ 19. There are no objections to the Settlement and only two opt-outs. Admin. Decl. ¶ 20; Joint Decl. ¶ 26. Also, there are currently 7,945 claims filed, plus an additional presumptive 641

Digital Image Payments (for which no claim need be filed), equating to an effective claims rate of 3.58%.[6] This Settlement is plainly well-supported by the Settlement Class.

4. **The Adequacy of the Settlement Relief (Rule 23(e)(2)(C) and *Bennett* Factors 1–4) -** Although Plaintiffs believe the claims asserted in the Litigation are meritorious and the Settlement Class would ultimately prevail at trial, continued litigation against Defendant poses significant risks that make any recovery for the Settlement Class uncertain. Data breach class actions are risky. *Mednax*, 2024 WL 1554329 at *7; *Lomedico v. MarineMax, Inc.* at Pg. 13 ("Continued litigation of this action would be complex, expensive, and risky for both Parties."). The Settlement's fairness is underscored by consideration of the obstacles the Settlement Class would face in ultimately succeeding on the merits, as well as the expense and likely duration of the litigation. Despite the risks involved with further litigation, the Settlement Agreement provides outstanding benefits, including substantial Digital Image Cash Payments and reimbursement of documented losses for all Settlement Class Members. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1273 (11th Cir. 2021) ("Settlements also save the bench and bar time, money, and headaches"); *Petersen*, 2019 WL 11093816, at *7 (recognizing delay and risk of defendant prevailing

---

[6] This is within and far exceeds the range of claim rates in data breach class actions. *See*, *e.g.*, *Carter v. Vivendi Ticketing United States LLC*, No. SACV2201981CJCDFMX, 2023 WL 8153712, at *9 (C.D. Cal. Oct. 30, 2023) (holding that a 1.6% claim rate "is in line with claim rates in other data breach class action settlements that courts have approved" and collecting cases); *In re Forefront Data Breach Litig.*, No. 21-CV-887, 2023 WL 6215366, at *4 (E.D. Wis. Mar. 22, 2023) (stating that a claim rate of 1.46% "is generally in line with the rate experienced in other data breach class actions").

as weighing in favor of approving settlement). Furthermore, the attorneys' fees do not impact the other terms of the Settlement, as Class Counsel and Defendant negotiated and reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material Settlement terms. SA ¶ 7.1; *see James D. Hinson Elec. Contracting Co., Inc. v. BellSouth Telecomm. Inc.*, No. 3:07-cv-598, 2012 WL 12952592, at *2 (M.D. Fla. July 30, 2012) (because agreement as to amount of attorneys' fees "was not reached until after a settlement had been reached in principle on its other terms and that the agreement was not the product of collusion or fraud[,]" it was entitled to "substantial weight"). The Settlement, including disbursement of the Settlement Class Member benefits, is also not contingent on approval of the attorneys' fee award to Class Counsel. SA ¶ 7.6. Subject to the Court's approval, the proposed attorneys' fees award is also fair. Finally, the Parties' agreements are all in the Agreement, with the exception of a Separate Opt-Out Agreement that Plaintiffs submitted to this Court under seal (and that was subsequently unsealed). Joint Decl., ¶ 21.

The Settlement is within the range of possible recoveries and is fair, adequate, and reasonable. *See Burrows v. Purchasing Power, LLC*, No. 1:12-CV-22800, 2013 WL 10167232, at *6 (S.D. Fla. Oct. 7, 2013). In determining whether a settlement is fair and reasonable, the court must also examine the range of possible damages Plaintiffs could recover at trial and combine this with an analysis of Plaintiffs' likely success at trial to determine if the settlements fall within the range of fair recoveries. *See, e.g.*, *Equifax*, 999 F.3d at 1274 (affirming district court's decision that settlement was "fair,

reasonable, and adequate because the settlement reflects relief the Court finds is in the high range of what could have been obtained had the parties continued to litigate.").

Here, with a Settlement Class size of 239,387 and a $10 million recovery, the per person recovery is $41.77. A few recent examples of approved data breach settlements from courts in the Eleventh Circuit demonstrate how the instant Settlement compares very favorably to other similar common fund data breach settlements:

- $4.72 per class member: *McNally, et al. v. Infosys McCamish Systems, LLC*, No. 1:24-cv-00995-JPB (N.D. Ga. Dec. 18, 2025), ECF No. 81 at 6-7 ($17,500,000 fund for approximately 3.7 million individuals), **Doc. 37-2**
- $3.59 per class member: *Geleng v. Indep. Living Sys., LLC*, No. 23-21060-CV (S.D. Fla. July 7, 2025), No. 23-21060-CV, ECF No. 105 ($14,000,000 fund for approximately 3.9 million individuals), **Doc. 37-3**
- $4.76 per class member: *Cain, et al. v. CGM, L.L.C.*, No. 1:23-CV-02604-SEG, 2025 WL 2814398, at *12 (N.D. Ga. March 10, 2025) ($1,500,000.00 fund for 314,857 individuals)
- $7.00 per class member: *In re Fortra File Transfer Software Data Sec. Breach Litig.*, 794 F. Supp. 3d 1203, 1212, 1215 (S.D. Fla. 2025) ($7,000,000 fund for approximately 1,000,000 individuals)
- $10.00 per class member: *In re Overby-Seawell Company Customer Data Security Breach Litigation*, No. 1:23-md-03056-SDG (N.D. Ga. Dec. 16, 2024), ECF No. 156 at 10 ($6,000,000 fund for over 600,000 individuals), **Doc. 37-7**
- $2.21 per class member: *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, No. 21-MD-02994-RAR, 2024 WL 1554329, at *4, 7 (S.D. Fla. Apr. 10, 2024) ($6,000,000 fund for approximately 2,712,790 individuals)

- $2.50 per class member: *In re Lincare Holdings Inc. Data Breach Litig.*, No. 8:22-CV-01472-AAS, 2024 WL 3104286, at *4 (M.D. Fla. June 24, 2024) ($7,250,000.00 fund for approximately 2.9 million individuals)

- $1.99 per class member: *Sherwood v. Horizon Actuarial Servs., LLC,* No. 1:22-cv-10495-ELR (N.D. Ga. Apr. 2, 2024), ECF No. 94 ($8,733,446.36 fund for 4,386,969 individuals), **Doc. 37-8**

- $0.75 per class member: *Desue v. 20/20 Eye Care Network, Inc.*, No. 21-CIV-61275-RAR, 2023 WL 4420348, at *2 (S.D. Fla. July 8, 2023) ($3,000,000 fund for approximately 3,976,023 individuals).

Also, the Claim Form submission process and the planned distribution of Settlement Class Member benefits is, fair, convenient, and effective. *See generally* Admin Decl. Settlement Class Members will promptly receive payments by electronic means or paper check. The Settlement Administrator is highly qualified to manage the entire process. *Id*. "Thus, through the Settlement, Plaintiffs and Settlement Class Members gain significant benefits without having to face further risk of not receiving any relief at all." *Mednax*, 2024 WL 1554329, at *7.

5. **The Equitable Treatment of Settlement Class Members (Rule 23(e)(2)(D)) -** As the court found in *Mednax*, 2024 WL 1554329, at *7, all Settlement Class Members are given an equal opportunity to claim Settlement Class Member benefits. While the relief categories are individually tailored to the circumstances of the Settlement Class Members, all Settlement Class Members may claim monetary benefits applicable to their particular set of circumstances. Moreover, all will benefit from Watson's business practice changes. Thus, "[t]he method of distributing the

settlement benefits will be equitable and effective." *Id.*

Accordingly, the Court should find the Settlement is fair, reasonable, and adequately protects the interests of the Settlement Class Members.

**C. Notice Was Adequate and Satisfies Rule 23 and Due Process Requirements.**

The Court-approved Notice Program carried out by the Settlement Administrator conforms with the procedural and substantive requirements of due process and Rule 23. Admin Decl. ¶ 14. Settlement Class Members received Notice of the settlement and had the opportunity to be heard and participate in the Litigation. *See* Fed. R. Civ. P. 23(c)(2)(B). The Court exercised its discretion to approve a reasonable Notice Program. As the Court held when granting Preliminary Approval, the Letter Notices for Digital Cash Payments, Postcard Notice, and Long Form Notice posted on the Settlement Website "appears reasonable." (Doc. 34 at 3). Notice was the best notice practicable under the circumstances and constituted due and sufficient notice of the Settlement to all Class Members. The best notice practicable is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). The Notices included, among other information: a description of the material terms of the Settlement; how to submit a Claim Form; the Claim Form Deadline; the last day to opt-out of the Settlement Class; the last day to object to the Settlement and/or Application for Attorneys' Fees and Costs; the Final Approval Hearing date; and the

Settlement Website address at which Settlement Class Members may access the Agreement and other related documents and information. *See* Admin Decl. Exs. C, D and E. The Notice Program also included a toll-free number to ask Settlement-related questions and the Settlement Website containing relevant Settlement information. Finally, the Notice Program satisfies the requirements of Rule 23(h)(1), as it notifies the Settlement Class that Class Counsel may apply to the Court for an award of attorneys' fees of up to 33% of the Settlement Fund, plus reimbursement of costs. *See Id.*

As shown above, direct notice is deemed to have reached 99.17% of the Settlement Class Members. Admin Decl. ¶ 14. Notice here was the best notice practicable, satisfying Rule 23 and all due process considerations.

## V. CONCLUSION

Plaintiffs and Class Counsel respectfully request this Court enter an order: (1) granting Final Approval to the Settlement; (2) affirming certification of the Settlement Class for settlement purposes, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3); (3) confirming the appointment of Plaintiffs Charles Viviani and David Thorpe as Representative Plaintiffs; (4) confirming the appointments of Patrick A. Barthle and Gary M. Klinger as Class Counsel; (5) awarding Class Counsel $3,300,000.00 for attorneys' fee, reasonable litigation expenses of $77,864.67, and service awards of $2,500.00 to each Representative Plaintiff; (6) approving payment of Costs of Claims Administration; and (7) entering final judgment dismissing the Litigation with prejudice and reserving jurisdiction over Settlement implementation.

Dated: February 23, 2026

Respectfully submitted,

*/s/ Gary M. Klinger*
Gary M. Klinger (*pro hac vice*)
**MILBERG PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: 866-252-0878
Fax: 865-522-0049
gklinger@milberg.com

Patrick A. Barthle II
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
Florida Bar No. 99286
E-Mail: pbarthle@ForThePeople.com
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 229-4023
Facsimile: (813) 222-4708

*Class Counsel and Attorneys for Plaintiffs*

## LOCAL RULE 3.01(g) CERTIFICATION

Plaintiffs' counsel conferred with counsel for Defendants who indicated that Defendants' counsel do not oppose Plaintiffs' Motion for Final Approval.

*/s/Gary M. Klinger*
Gary M. Klinger

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been served via email via the CM/ECF system on all counsel of record on this 23rd day of February 2026.

*/s/ Gary M. Klinger*
Gary M. Klinger